CITY OF AUBURN, Appellant,

*vs.*

UNION WATER POWER COMPANY, Petitioner.

Androscoggin.    Opinion October 29, 1897.

*Waters. Great Ponds. Colonial Ordinance. Constitutional Law. Taking Water for Public Use Without Compensation. Spec. Laws, 1891, c. 82.*

It is a rule of law peculiar to this State and Massachusetts, under the Colonial Ordinance of 1641–7, that all great ponds,—that is, ponds containing more than ten acres—are owned by the State.

The legislature may permit towns and cities to take water from great public ponds and lakes, for the domestic use of their inhabitants, without being liable to pay damages to those who want the water for the use of mills.

This right to the use of water for domestic purposes is primary, and the right to its use as a mechanical power is secondary.

It is sometimes said that there must be no diversion of the waters of a stream; that the riparian proprietors above must allow the water to flow on in undiminished quantities to the riparian proprietors below ; but this is not a correct statement of the law. The true rule is that there must be no unlawful or unreasonable diminution or diversion of the water.

*Held;* that the diversion and consumption of water from great ponds and lakes, for domestic purposes by the public, is neither unlawful nor unreasonable.

*Held;* that the right of the people living in the vicinity of our great ponds and lakes to a reasonable amount of their waters for domestic purposes is sustained by the rules of the common law of this state, as well as ·by reason and the principles of natural justice.

The court affirms these principles here only of great ponds and lakes, the titles to which are held by the State for the use of· the public under the Colonial Ordinance of 1641–7. It does not declare or attempt to define in this case the rights that appertain, to wells, springs, rivulets or small ponds.

While private property can not be taken for public use without compensation, the waters of great ponds and lakes are not private property.

Wilson Pond is a great pond. Its supply of water is fifteen millions of gallons daily. Of this quantity the city of Auburn now uses probably half a million of gallons daily,—about one-thirtieth of the entire supply. Allowing that in the future the inhabitants of the city will consume one million of gallons

daily, leaving fourteen-fifteenths of the water to flow on to the works of the Union Water Power Company, *held;* that this is not an unconscionable or unreasonable division of the water.

Under an act of the legislature (Priv. and Spec. laws 1891, c. 82,) the city of Auburn was empowered to take water from Wilson Pond sufficient for domestic purposes, etc. The Union Water Power Company claimed a superior and paramount right to the entire water of the pond, "including all the natural flow of the same;" and that, if any portion of the water was diverted by the citizens of Auburn for domestic purposes, the company would be entitled to damages. *Held;* that the claim can not be sustained.

*Held;* that the Union Water Power Company has not become entitled to the whole of the water of Wilson Pond by adverse use. Its prior use of the water has no element of adverseness in it; and the governmental powers of the state are never lost by mere non-use.

In this case, the city of Auburn is the only party that has a charter from the legislature. The Union Water Power Company, organized as a corporation under the general law of the state, and having created a storage of water by dams, etc., in Wilson Pond, has neither asked nor obtained from the legislature any property rights or special privileges in the waters of the pond.

*Held;* that the Union Water Power Company has no such rights in the waters of that pond as entitles it to damages from the city of Auburn for the taking of water from that pond for domestic purposes.

Water for use as a mechanical power is important and should receive reasonable protection; but water for domestic use, and by which the health and cleanliness of the people, and protection against fires, are to be secured, is also important.

*Held;* that when water for both purposes is drawn from the same public fountain, neither of the parties should be required to pay damages to the other.

*Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548, approved.

ON REPORT.

This was an appeal of the city of Auburn from the award of the county commissioners assessing damages to the Union Water Power Company of Lewiston, in the sum of $24,500 for the taking by the city of Auburn of water for public purposes under the provisions or chapter 82 of the Private and Special Laws of the State of Maine of 1891. The fourth section of the act authorized the taking and provides that, in any case in which damages are to be allowed, if the city and the landowner were unable to agree upon the damages to be paid for such taking, application should be made to the commissioners of the county of Androscoggin, " who shall cause such damages to be assessed in the same

manner and under the same conditions, restrictions, limitations and rights of appeal as are by law prescribed in the case of damages for the laying out of highways so far as such law is consistent with the provisions of this act."

The case was submitted to the law court on report, the parties stipulating that if the Union Water Power Company was not entitled to damages, judgment should be rendered in favor of the city as the appellant, but that if it should be determined by the law court that the Union Water Power Company was entitled to damages, then the amount of such damages should be determined at nisi prius.

The petition of the Union Water Power Company, praying for an assessment of damages represented that "it is the owner of certain water rights, water sources and easements in the waters of Wilson Pond, so-called, situated in Auburn in said county, and of certain lands and rights of flowage around said pond, and the outlet stream thereof, and also of certain lands, dams, water power, water rights and privileges upon said outlet stream, and of the right to hold, accumulate and store the waters of said pond by means of said dams, and to draw off the same by means of gates and sluices in said dams:

"And said company, also, says that it is the owner of an extensive system of dams, canals, water rights and privileges on the Androscoggin river at said Lewiston, and of certain lots of land at said Lewiston, situated on the main canal of said company at said Lewiston, and known as the 'Mill Site' lots, and which lots by the terms of the conveyances thereof to said company can only be used for manufacturing purposes; and said company says that the value of said lots for manufacturing purposes depends upon the quantity of water and water power capable of being furnished by the Androscoggin river at said Lewiston. And said company owns and controls all the rights of flowage on both sides of the Androscoggin river above said dam at said Lewiston to the point and beyond where the outlet stream from said Wilson Pond flows into said Androscoggin river, and it has the right to hold and store the waters of said river by means of its dams at said Lewiston in

the same manner and to the same height at which it and its predecessors in title for a long time hitherto have done.

" And said company says that it and its predecessor in title have heretofore made perpetual leases and conveyances of water and water power to certain individuals and corporations at said Lewiston and Auburn, all of which leases and conveyances are now in full force, and said company is bound by the terms and obligations thereof to furnish and supply the quantity of water and water power specified in said leases and conveyances:

" And said company says that heretofore all the flow of water from said Wilson Pond ran through said outlet stream to said Androscoggin river, and from thence commingling with the waters of said river into the mill ponds and canals of said company at said Lewiston; and that said company, as the owner of the dams, water rights and privileges at the outlet of said Wilson Pond, has the right to have the natural overflow of said pond flow through said outlet stream without any dimunition or diversion thereof, and that as the owner of the lands, water power, water rights and privileges on the Androscoggin river at said Lewiston, it is entitled to the full benefit of the natural flow of said pond into said river as the same has heretofore forever been accustomed to flow:

" And said company alleges that it has the right to raise and store the waters of said pond by means of said dams at the outlet thereof to the present height of said dams, and to draw off all of said stored waters, from time to time, by means of the gates and sluices in said dams through said outlet stream for the use and benefit of its lands, mill sites, water power and privileges at said Lewiston, and to enable it to furnish and supply its said several lessees and grantees with water and water power as it has for a long time heretofore been accustomed to do; and that it has the right to manage and control, accumulate and draw off the waters of said pond by means of said dams, gates and sluices, for its own use and benefit and in such manner as it has heretofore for a long time done.

" And said company further alleges that it has heretofore for a long time used, managed and controlled all the waters of said

Wilson Pond for its own use and benefit, and accumulated and stored the waters thereof by means of its said dams upon the outlet stream thereof, and drawn off the same through said outlet stream at such times and in such quantities as it deemed necessary for the use and benefit of the water power and privileges owned by it and located on the Androscoggin river at said Lewiston, and that said company has the right to so manage, hold, store, control and draw off the waters of said pond, including all the natural flow of the same, as well as all the stored waters thereof through said outlet stream without any denial, diversion or interruption of the same or any part thereof by the city of Auburn or any person or corporation whatsoever, except so far as the same has heretofore been conveyed by the Franklin Company, its predecessor in title, to the Auburn Aqueduct Company of said Auburn.

"And said company alleges that the entire natural flow of said pond through said outlet stream into said river, and the right to hold, use and draw off all the stored waters of said pond from time to time through said outlet stream is necessary to enable said company to furnish and supply the quantity of water and water power required to operate the various mills, manufacturing establishments and industries located at said Lewiston and Auburn, during all seasons of the year, as the same has heretofore for a long time been done; and that from time to time during each year for a period of more than thirty years hitherto, said company and its predecessors in title have used and drawn the waters of said pond, by means of its dams, sluices and gates upon said outlet stream for the purpose of supplying water and water power at said Lewiston, and that during all said time said pond has been used by said company and its predecessors in title as a reservoir from which to draw in times of drought and shortness of water in the Androscoggin river at said Lewiston:

"And said company alleges that the city of Auburn, acting under and by virtue of the power and authority conferred upon it by chapter 82 of the Private Laws of Maine, approved February 19, 1891, have taken the waters of said pond for the uses and purposes specified in said act, by means of pipes leading from said

pond to various parts of the city, of the dimensions and locations particularly specified in the notice of such taking filed by said city in the registry of deeds for this county, . . . etc.

"And said company alleges that by such taking the city of Auburn has thereby diverted the natural flow of the waters of said pond from said outlet stream and have drawn off the waters accumulated and stored in said pond, as hereinbefore set forth and diverted the same from said outlet stream, and prevented this company from drawing and having the natural flow of the waters of said pond run through said outlet stream, and prevented this company from holding. storing, accumulating, managing and controlling the waters of said pond, and from drawing off the stored waters thereof through said outlet stream as it has the right to do, and has thereby destroyed this company's property rights in the waters of said pond, and the water sources, water rights and easements therein owned by said company, and caused this company great and irreparable injury and damage.

"And in and by the premises your petitioner has been greatly damaged in its property by the taking of and injury to its land, real estate, water and water rights, and by said interference with and injury to the use and management of the water of said pond, to which the petitioner at the time of said taking was legally entitled.

"And your petitioner alleges that it has been unable to agree with said city as to the amount of damages sustained by it in its property on account of the taking of the waters, water sources, water rights and easements as hereinbefore set forth.

"Whereupon, your petitioner applies to this Honorable Court in accordance with the provisions of said act of February 19, 1891, and asks that the damages sustained by it in this behalf be assessed and determined."

An appeal from the award of damages, made by the county commissioners, having been taken by the city of Auburn, a complaint on appeal by the city was duly filed in this court below on the third Tuesday of January, 1896.

The material portions of the appeal are as follows:  . . . .

" That your said complainant was aggrieved by said determination and adjudication that the said Union Water Power Company was damaged as aforesaid by the said taking of the waters of said pond.

" First, because said Union Water Power Company was not entitled to any damages.

" Second, because the damages awarded as aforesaid were excessive.

" That said pond is of more than ten acres in area, and is a ' Great Pond ' within the terms and meaning of the Colonial Ordinances of 1641 and 1647.

" That your said complainant has purchased and owns a right of way, fifty feet in width, to said pond, together with the perpetual right and easement of laying and maintaining therein the pipe line mentioned and described in said city's notice of taking, etc.

" That the said Union Water Power Company at the time of the said taking of the waters of said pond by the said city of Auburn had no private property, ownership or lawful title in or to the waters of said Great Pond, or any easement of a private nature therein.

" That the acts of said Union Water Power Company in managing and controlling the waters of said pond, accumulating and storing its waters therein and drawing off the same at times and in quantities as it saw fit, as alleged in its said petition, were unlawful and without legislative authority or sanction.

" That the said city of Auburn, in taking said water from said pond at the time and in the manner aforesaid, did not take or do any legal damage or injury to any of the land, real estate, water, or water rights of said Union Water Power Company.

" That your said complainant duly and seasonably appealed from said award of damages of the said county commissioners to the Supreme Judicial Court, held as aforesaid, being the term of said court first held in the county where said pond is situated, more than thirty days after the expiration of the time within which such appeal might be taken, excluding the first day of its session, and filed with the county commissioners for said county of

Androscoggin notice of said appeal before the third day of the regular term of court of said county commissioners succeeding that at which said commissioners' return was made, to wit, on April 12th, A. D. 1895. . . ."

Among other admissions by the parties, it was agreed that the purposes of the Union Water Power Company, organized under the general laws of the state, are as follows:

" Of carrying on business as owners of property, real and personal, consisting of land, mills, factories, dams, canals, water rights and water power and other estate, situated in said Lewiston and at other points upon, adjacent to, or in the neighborhood of the Androscoggin river and its tributaries, and around its sources in both of the States of New Hampshire and Maine; such business to consist in the holding of said property and the purchase of any new or other property of a similar character, or in holding, managing, selling, leasing and otherwise using all of said property in any legal manner for their own profit and advantage, under and in accordance with the laws of said states respectively, and if need be through the agency of any acts of incorporation or organization of companies.

" Also, as owners of such dams and other property to produce or create water power or privileges, and to sell, lease or use the same, and in connection therewith to manage and control the use and flow of the waters of said river in any legal manner for their own benefit, as well as for the public use and benefit, receiving the proper and legal toll or compensation.

" And, also, for the purpose of transacting and carrying on the business of manufacturing cotton or woolen fabrics, or iron or wood, as may be determined by the corporators, by means of water mills in said Lewiston."

*N. W. Harris; J. A. Pulsifer; W. W. Bolster; J. W. Symonds, D. W. Snow and C. S. Cook; and A. R. Savage,* for city of Auburn.

*W. H. White and S. M. Carter; and J. A. Morrill,* for Union Water Power Company.

584            AUBURN *v.* WATER POWER CO.            [90

Sitting: Peters, C. J., Walton, Emery, Haskell, White-
house, Strout, JJ.

Walton, J.   This is a petition for the assessment of damages.
It is presented by the Union Water Power Company of Lewiston,
and the question is whether, under the circumstances disclosed by
the evidence, the company is entitled to damages.

It appears that in 1891, the legislature authorized and empow-
ered the City of Auburn to take water from Wilson Pond suffi-
cient for domestic purposes and the extinguishment of fires and
the supply of hotels and livery stables and laundries, and for
sprinkling its streets.   Priv. and Special Laws, 1891, c. 82.

For water taken under the authority of this act, the Union
Water Power Company of Lewiston claims that it is entitled to
compensation.   The Company claims that it has a superior and
paramount right to the entire waters of the pond, "including all
the natural flow of the same," and that, if any portion of the
water is diverted and used by the citizens of Auburn for domestic
purposes, the Company is entitled to damages.   The question is
whether this claim can be sustained.   It is the opinion of the court
that, under the circumstances disclosed by the evidence, the claim
cannot be sustained.

It is a settled rule of law in this State and Massachusetts that
all great ponds,—that is, ponds containing more than ten acres,—
are owned by the state.   This is a rule of law peculiar to this
State and Massachusetts.   It is said to have been derived from the
Colonial Ordinance of 1641–7.   The rule, as stated by Chief Jus-
tice Morton, in a recent Massachusetts case, is as follows:—

" Under the Ordinance, the state owns the great ponds as pub-
lic property, held in trust for public uses.   It has not only the jus
privatum, the ownership of the soil, but also the jus publicum
and the right to control and regulate the public uses to which the
ponds shall be applied.   The littoral proprietors of land upon the
ponds have no peculiar rights in the soil, or in the waters, unless
it be by grant from the legislature."   *Watuppa Reservoir Co.* v.
*Fall River*, 147 Mass. 548.

In the case cited, the Reservoir Company had constructed an expensive dam and had paid large sums of money for flowage rights, and had controlled the waters of the Watuppa pond for nearly sixty years. The legislature then authorized the city of Fall River to take water from the pond for domestic uses and the extinguishment of fires, and all other public uses of the city, without liability to pay any other damages than the state itself would be legally liable to pay. The peculiar wording of this statute in relation to damages was undoubtedly intended to test the authority of the legislature to confer upon towns and cities the right to take water from great ponds for domestic purposes without being liable for damages; and the court so treated it; and a majority of the court held that the authority existed. The majority opinion was by Chief Justice Morton. The minority opinion was by Mr. Justice Knowlton.

We have examined the opinions with care. The minority opinion rests apparently upon the assumption that all of the waters of our great public ponds and lakes are dedicated, primarily, to the use of mills, and that no town or city can take any portion of the waters for domestic purposes without being liable in damages therefor to the owners of the mills. The majority opinion recognizes the right of the people to have pure water for domestic use, and affirms the authority of the legislature to permit towns and cities to take water from great public ponds and lakes for the use of their inhabitants without being liable to pay damages to those who want the water for the use of mills.

We think the doctrine of the majority opinion is correct. It is sustained by reason as well as authority. Water for domestic use is a necessity. Man can not exist without it. Water for the use of mills is a convenience only. And there is no conceivable reason why those who want it for domestic use should be compelled to buy it of those who want it for the use of mills.

In *Philadelphia* v. *Collins*, 68 Pa. St. Rep. 106, the jury were instructed that every individual residing upon the banks of a stream has a right to the use of the water to drink, and for the ordinary uses of domestic life; and that where large bodies of

people live upon the banks of a stream, as they do in large cities, the collective body of the citizens has the same right; and the instruction was held to be correct.

The right to the use of water for domestic purposes is primary, and the right to its use as a mechanical power is secondary; and to the extent that the two rights conflict, its use as a mechanical power must be surrendered. *Evans* v. *Merriweather*, 3 Scam. (Ill.) 492.

True, it is sometimes said that there must be no diversion of the waters of a stream; that the riparian proprietors above must allow the water to flow on in undiminished quantities to the riparian proprietors below. But this is not a correct statement of the law. And the inaccuracy of the statement has often been pointed out. The true rule is that there must be no unlawful or unreasonable dimunition or diversion of the water. The diversion and consumption of water for domestic purposes is neither unlawful nor unreasonable. As said by Mr. Justice DICKERSON in *Davis* v. *Winslow*, 51 Maine, 264, "water, air, and light are the gifts of Providence, designed for the common benefit of man, and every person is entitled to a reasonable use of each. . . . . A reasonable use is the touchstone to which cases of this description must be subjected."

And in another case, Mr. Justice RICE said that this right to a reasonable amount of water for domestic purposes necessarily implies a right to diminish the volume of the water. *Davis* v. *Getchell*, 50 Maine, 602.

A gallon of water withdrawn from Moosehead lake will diminish the quantity that would otherwise flow down the Kennebec river. But, surely, no one will doubt the right of the people who live near that lake to take and use for domestic purposes a reasonable amount of its waters. Nor can any one believe that such a use would be a wrong to the owners of any of the dams across the Kennebec river. The right of the people living in the vicinity of our great ponds and lakes to a reasonable amount of their waters for domestic purposes is sustained by the rules of the common law of this state, as well as by reason and the principles of natural

justice, as the cases cited will show. And it is only of our great public ponds and lakes that we are now speaking. We are not declaring or attempting to define the rights appertaining to wells, springs, rivulets or small ponds. It is only of great ponds and lakes, the titles to which are held by the state for the use of the public, that we are now speaking. And of these great public ponds and lakes, we affirm' that by the rules of the common law of this state, the people are entitled to a reasonable portion of their waters for domestic purposes without being obliged to buy it of the owners of mill-privileges. And we affirm further, that, by virtue of the rule of property derived from the Ordinance of 1641–7, as interpreted in this state as well as Massachusetts, the title to all great ponds,—that is, ponds containing more than ten acres,—is in the state, and that the legislature may confer upon towns and cities the right to take water from such ponds for domestic purposes without making such towns and cities liable for the losses thereby sustained by the owners of mill-privileges. Health is of more importance than wealth, and cleanliness is next to godliness; and we hold that the right of the people to an abundant supply of pure water, by which their health and cleanliness may be secured, is paramount to the right of mill-owners to have the water for propelling their machinery; and that, to the extent that the two rights conflict, the latter must yield. Of course, private property can not be taken for public use without making compensation for it. But the waters of great ponds and lakes are not private property. They are owned by the state; and the state may dispose of them as it thinks proper.

Wilson Pond is a great pond. Its supply of water is fifteen millions of gallons daily. Of this quantity Auburn probably uses about a half a million of gallons daily. This is only about one-thirtieth of the entire supply. It is a quantity comparatively so small that its withdrawal from the pond does not perceptibly lessen the size of the stream at the outlet. The quantity used by Auburn will probably be somewhat increased in the future. But there is no probability that the quantity used daily will ever exceed a million of gallons. Auburn is a city large in territory;

but the number of its inhabitants does not exceed fifteen thousand; and a considerable portion of them do not and never can receive their supply of water from Wilson Pond. But allowing that ten thousand of its inhabitants will at some future day receive their water from the pond, and that each one of these inhabitants will consume a hundred gallons daily; then the quantity will be only a million of gallons, leaving fourteen-fifteenths of the water to flow on to the works of the Union Water Power Company as heretofore. Surely, the Union Water Power Company can not complain that this is an unconscionable or unreasonable division of the water.

But we are asked to consider if the Union Water Power Company has not become entitled to the whole of the waters of Wilson Pond by an adverse use. We do not think the use has been adverse. The Company and its predecessors in title have used the water of the pond, or so much of it as has flowed out of the pond through its natural channel and become mingled with the waters of the Androscoggin river; but this has been a rightful use. It has had no element of adverseness in it. It has encroached upon no one's rights, and no one has had a right to suppress it. Such a use can never ripen into a prescriptive title. *Pratt* v. *Lamson*, 2 Allen, 275. And, besides, the authority of the state to control the waters of great ponds, and determine the uses to which they may be applied, is a governmental power, and the governmental powers of the state are never lost by mere non-use. In the Watuppa case (147 Mass. 548) the Reservoir Company has had the entire control and use of the waters of the Watuppa ponds for nearly sixty years. But the court held that the legislature might, nevertheless, confer upon the city of Fall River the right to take water from the ponds for domestic purposes without being liable to pay damages.

The Watuppa case was embarrassed by the fact that both parties had charters from the legislature. The Reservoir Company had been chartered as early as 1826, and granted the right to construct a reservoir dam that would raise the water two feet higher than it had before been raised, and to draw off the water in such quantities and at such times and in such manner as it should judge

proper.  And under authority of this charter the corporation had expended large sums of money and had had the entire use and control of the waters of the ponds for nearly sixty years when the authority to Fall River was granted to take water from the ponds for domestic purposes.  And the Reservoir Company claimed that it had thereby become invested with property rights in the entire waters of the ponds of which it could not be divested without compensation.  Upon this question the court was divided, three judges holding that the Resevoir Company was entitled to damages and four judges that it was not.

We are embarrassed by no such question.  In this case, only one of the parties has a charter from the legislature, and that party is the city of Auburn.  The Union Water Power Company is a self-created corporation, organized under the general law.  It has no charter from the legislature.  It has never asked for and has never obtained from the legislature any property rights or any special privileges in the waters of Wilson Pond.  It has no property rights in the waters of the pond which are taxable in the city of Auburn, and we think it has no such rights in its waters as entitles it to damages from the city of Auburn.  See *Water Power Co.* v. *Auburn*, ante, 60.

The state's ownership of great ponds, and the authority of the legislature to permit water to be taken from such ponds for domestic purposes without the payment of damages, were affirmed in *Fay* v. *Salem and Danvers Aqueduct*, 111 Mass. 27.

No reason is perceived why the same doctrine should not prevail in this state.  The Colonial Ordinance of 1641–7 is in force in this state; and it is settled law that by virtue of it, the title to all great ponds is vested in the state.  The right of the people to a sufficient quantity of water for domestic purposes is incontrovertible.  And when, by permission of the legislature, this supply is taken from ponds which are owned by the state, no reason is perceived why the takers should be required to pay damages to persons or corporations who do not own the water.  If water is taken from wells, or springs, or small ponds, or small streams, which are owned by private persons or corporations, of course,

compensation must be made. But, if taken from great ponds, which are owned by the state, no reason is perceived why damages should be exacted. Water for use as a mechanical power is important, and should receive reasonable protection. But water for domestic use, and by which the health and cleanliness of the people, and protection against fires, are to be secured, is also important. And when water for both purposes is drawn from the same public fountain, no reason is perceived why either of the parties should be required to pay damages to the other.

Tested by the rules of the common law, which require a reasonable use, and, in case of conflict, a just and fair division of water, and the claim of the Union Water Power Company must fail. Tested by the rules of law derived from the Colonial Ordinance of 1641–7, and the result is the same. No property rights of the Union Water Power Company have been invaded by the city of Auburn. The water which the city of Auburn is using is a donation from the state. The claim of the Union Water Power Company that it is entitled to the entire waters of Wilson Pond is not sustained by the evidence; and it is the opinion of the court that its claim to recover damages must be rejected.

*Petition dismissed. No costs for either party.*