## City of Elgin v. Elgin Hydraulic Co.

1. RECOVERY—*Must be by a Party in Interest.*—It is the general rule that when injury is done to property a recovery for the same can only be had by some person who has an interest in the property, legal or equitable, which the law recognizes.

2. SAME—*Elgin Hydraulic Company.*—The Elgin Hydraulic Company was organized in 1867 (Private Laws 1867, Vol. 2, 88), as a means of controlling the use of the water, as between the several owners of the same on both sides of Fox river, and to keep the dam, race-ways, gates, etc., in repair, and as such has no such property interest in the water of the river as authorizes it to bring a suit for the use and appropriation of the water from the river by the city of Elgin for city purposes.

3. CONSTRUCTION OF STATUTES—*The Act to Authorize the Building of a Dam Across Fox River.*—The special act of 1839, entitled "An act to

City of Elgin v. Elgin Hydraulic Co.

enable James T. Gifford and Samuel J. Kimball to build a dam across the Fox river," approved February 15, 1839 (Laws 1839, 108), is not in the nature of a contract, which can not be modified or annulled by the State, but is in the nature of a license, which can be revoked by a subsequent act of the legislature.

4.  SAME—*Rights of the State Not Lost.*—By the passage of the special act of 1839, giving Clifford and Kimball authority to erect the dam across Fox river, the State did not part with any right it may have had to control said stream for the benefit of the general public.

5.  WATERS—*Right of the Public Along Fox River.*—The right of the public residing along Fox river to take water out of the same for domestic, sanitary and fire purposes, is paramount to the right of the owners of said water power to use it for the purpose of propelling the machinery of their mills.

**Action in Case,** to recover damages for appropriating water. Appeal from the Circuit Court of Kane County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the May term, 1899. Reversed. Opinion filed October 12, 1899.

CHAS. H. FISHER and CHAS. L. ABBOTT, attorneys for appellant; R. N. BOTSFORD, of counsel.

The first contention is that the appellee can not maintain this action because it has no pecuniary or property rights in the damages sought to be recovered. Elgin Hydraulic Co. v. City of Elgin, 74 Ill. 433; Peoria Insurance Co. v. Frost, 37 Ill. 333.

The appellee is not a riparian proprietor, and therefore has no pecuniary interest in the damages sought to be recovered by reason of ownership of any riparian rights. It is not the owner of any right or title, as shown by the record, in the waters flowing in Fox river. Jones v. Westerhausen, 18 Atl. Rep. 1072.

If there has been any diminution of water, caused by appellant's use thereof, for which there could be a right of recovery, the right of action is alone in the owners of the several mill properties.

Fox river is in law and fact a navigable stream, and its waters are so far the property of the State that the State may control them for public purposes, regulate their flow and authorize municipalities within the borders of the State to take for their citizens such waters for domestic purposes,

or for any reasonable use thereof by the cities of the State. Ordinance of 1887, Art. IV, S. & C. St. 45; Laws of Illinois, 1839–40, page 98; Watuppa Reservoir Co. v. City of Fall River, 147 Mass. 548.

The city of Elgin, in taking water from Fox river for ordinary public use and for the use of its inhabitants by a a system of water-works, is not subject to same rule which obtains between riparian owners, so as to make the city liable in this action for any diversion of water for such use. Rundell v. Canal Co., 14 How. 80; St. Anthony Falls W. P. Co. v. Board of Water Com'rs, 168 U. S. 349; Minneapolis Mill Co. v. Board of Water Com'rs of City of St. Paul (Minn.), 58 N. W. Rep. 33.

The right to use water from the large rivers, ponds and lakes within this State, by the public, for domestic purposes, is primary, and the right of individuals to use it as a mechanical power is secondary, and, to the extent that these rights conflict, that for public and domestic use is paramount. Evans v. Merriweather, 3 Scam. 492; City of Auburn v. Union Water Power Co., 38 Atl. Rep. 561; People v. Tibbetts, 19 N. Y. 528.

Under the law of this State applicable thereto, the city of Elgin is authorized to take from Fox river its source of supply for furnishing its citizens with water, in the manner it is now doing, without making any compensation therefor to appellee, or to the owners of water power in said city. The mode and manner of such taking here complained of is but a lawful and reasonable use of such water. Evans v. Merriweather, 3 Scam. 492; Lamprey v. Metcalf (Minn.), 53 N. W. Rep. 1139; Minneapolis Mill Co. v. Board of Water Com'rs City of St. Paul (Minn.), 58 N. W. Rep. 33.

When private and public rights come in conflict in the use of public waters, those of the public are paramount. The State can not grant such paramount right to individuals or corporations. Black River Improvement Co. v. La Crosse, 54 Wis. 659; Philadelphia v. Collins, 68 Pa. St. 106; Illinois v. Ill. C. R. R. Co., 146 U. S. 387.

Municipal bodies act for the State, and to the extent

authorized, exercise the powers of government, and when so exercising such powers they may, when so authorized, do so without conforming to all other requirements imposed by the practice on natural or artificial persons created for the purpose of business or gain.   The city of Elgin is a branch of the State government.   Holmes v. City of Mattoon, 111 Ill. 27.

Even if there was ever a right of action in the appellee for the cause complained of, such right is barred by the statute of limitations.   City of Centralia v. Wright, 58 Ill. App. 51.

The court below, in awarding execution against the appellant for judgment and costs, committed error.   City of Carrollton v. Bazzette, 159 Ill. 284; Anderson v. Schubert, 158 Ill. 75.

The nominal judgment rendered by the court for the five years' diminution of the water claimed by appellee, shows that the court regarded the damages as being so infinitesimal as not to be susceptible of commutation.   The court, in such case, should have found for defendant.   Gehlen v. Knorr (Ia.), 70 N. W. Rep. 757.

J. W. RANSTEAD and D. B. SHERWOOD, attorneys for appellee; CHAS. WHEATON, of counsel.

The common law rule with regard to navigable waters prevails in this State, and no waters are navigable in law, in this State, unless the tide ebbs and flows therein.   Middleton v. Pritchard, 3 Scam. 510; Braxton et al. v. Bressaler, 64 Ill. 488; Ensminger v. People, 47 Ill. 384.

The legislature can not, by an act, declare a stream which is not in law navigable, or navigable in a state of nature, to be a navigable stream, so as to deprive the riparian owners of their right to use the water, without affording them compensation.   Gould on Waters, Sec. 111; Angell on Water-Courses, Sec. 536, note 7, and Sec. 541; Walker v. Board of Public Works, 16 Ohio, 540; Morgan v. King, 35 N. Y. 454; Sanitary District v. Martin, 173 Ill. 243.

The Supreme Court of the United States has held that

the decisions of the various States must control as to what the law in any State is as to riparian rights in navigable streams. Shively v. Bowlby, 152 U. S. 1 (14 Sup. Ct. Rep. 548).

Where the government grants land on the bank of a fresh water steam, without reservation, in States where the common law prevails, the grantees own to the middle line of the stream, including the bed of the stream, and all unsurveyed islands, etc. Grand Rapids and I. Co. v. Butler, 15 Sup. Ct. Rep. 991, 159 U. S. 87.

A grant of land bounded by a stream, whether navigable in fact or not, carries with it the bed of the stream to the center of the thread thereof. Longnor v. Benson, 8 Mich. 18; Rice v. Rudyman, 10 Mich. 135; Fletcher v. Thunder Boom Co., 51 Mich. 277; Turner v. Holland, 65 Mich. 453; City of Grand Rapids v. Powers, 89 Mich. 94; Harding v. Gordon, 140 U. S. 254, quoting Middleton v. Pritchard, 3 Scam. 510, with approval.

Where a fresh water stream, although navigable in fact, is held to be private property, because not navigable at common law, the crown, the State or the public, have no rights in it which are not connected with navigation. Gould on Waters, Sec. 46; Braxton v. Bressaler, 64 Ill. 488; City of Chicago v. McGinn, 51 Ill. 266; Ill. R. P. Co. v. Peoria B. Association, 38 Ill. 467; Ensminger v. People, 47 Ill. 384.

Where a water company connects its work with a lake, or fresh water stream, in those States where the common law prevails, it is liable in damages to other riparian owners if, by unreasonable use of the water, such owners are deprived of a reasonable use thereof. Valparaiso City Water Co. v. Dickover (Ind.), 46 N. E. Rep. 591; Rigney v. Tacoma Light and Water Co., 38 Pac. Rep. 147.

The act authorizing the city of Elgin to establish and maintain water-works, did not authorize it to take any private property, without purchasing the same, or condemning it under the Eminent Domain Act, R. S., Ch. 24, Sec. 176.

City of Elgin v. Elgin Hydraulic Co.

Riparian owners are entitled only to a reasonable use of the waters of the stream, and must so use the water as not to injure other riparian owners. Gould on Waters, Sec. 209, *et seq.;* Batavia Mfg. Co. v. Newton Wagon Co., 91 Ill. 230.

The Supreme Court has held that the riparian owners on the banks of Fox river own to the center thread of the stream, and are entitled to the water and water-power created by the river and the dams thereon. Stolp v. Hoyt et al., 44 Ill. 219.

A riparian owner has no right to use a stream so as to impair or injure the right of property of another proprietor. Evans v. Merriweather, 3 Scam. 494; Plumleigh v. Dawson, 1 Gil. 544; Yarwood v. N. Y. C. & H. R. R. R. Co., 83 N. Y. 400; Marsh v. D., L. & W. Ry. Co., 12 N. Y. Sup. 376; Heilbron v. Fowler Switch Canal Co., 75 Cal. 426; Anderson v. The Cin. South. Ry. Co., 86 Ky. 44; Halsey v. The Lehigh Valley Ry. Co., 16 Vroom (N. J.), 26; Society for Establishing Useful Manufactures et al. v. Morris Canal and Banking Co., 1 Saxton (N. J.), 157.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case brought by appellee against appellant to recover damages for the use and appropriation of water from Fox river, by the city of Elgin for city purposes, by means of a system of water-works, constructed and operated by said city, to the alleged injury of appellee.

A jury was waived and the court upon the trial of the case gave a judgment in favor of appellee for nominal damages and costs of suit. There was no controversy as to the main facts in the case. It appeared from the evidence that in the year 1837 James T. Gifford and Samuel Kimball, who were in possession, on opposite sides of the Fox river, of certain lands now within the city limits of the city of Elgin, constructed a dam across said river. In the year 1839 they procured from the legislature an act authorizing them to construct a dam across Fox river at the place in question, although the dam had in fact been already erected.

In 1840 the legislature passed an act declaring "that the Fox river in the counties of La Salle, Kane and McHenry, from its confluence with the Illinois at Ottawa to the northern boundary of the State, is hereby declared a navigable stream, and shall be deemed and held a public highway." At the time of the construction of the dam in question, Gifford and Kimball had no title to the land on the opposite sides of the river, adjoining it, but in 1842 they bought the same and obtained title from the United States government. Afterward the city of Elgin was incorporated, extending over said premises on both sides of the river and other territory.

The original owners of the land and water-power made conveyances of portions of their holdings from time to time to other parties, and in 1867 the several owners of the same, on both sides of the river, organized the Elgin Hydraulic Company as a means of controlling the use of said water as between themselves, and to keep the dam, race-ways, gates, etc., in repair, and obtained a special charter from the legislature of the State, which was approved March 9, 1867. In the year 1887 appellant purchased a strip of land, about an acre in extent, bordering on the Fox river above the city, erecting thereon pumping works, and constructed a system of water-works to supply said city with water for domestic, fire and sanitary purposes.

The water-works plant is located about a mile above the dam, and the latter causes the water to set back up the river about three miles. Appellant, after constructing its water-works system, extended its intake pipe into that portion of the mill-pond created by the dam included within the limits of the boundary of its purchase, and has ever since taken a part of its water for city purposes therefrom. Neither appellee nor the individual owners of the water-power in question objected to the use of the water by appellant, for the purposes named, until the year 1895, when it appearing, as claimed by appellee, that the supply of water to the mills operated by the water-power was becoming materially diminished by reason of the use of the water by appellant, this suit was brought.

The first contention made by appellant is, that the appellee can not maintain this action, because it has no pecuniary or property rights in the damages sought to be recovered. The declaration charges that during the dry season appellant unlawfully pumped out of the river, through its intake pipe, a large amount of water, by reason whereof the water of the river was insufficient to enable appellee's stockholders to work their machinery in the mills operated by them in as large and beneficial a manner as they otherwise would have done, and whereby appellee was deprived of the full and beneficial use of its property and of the benefits, profits and gains thereof, without appellant's first making compensation therefor.

Appellee was not a riparian owner, however, and had no title to the waters of the Fox river or to said water-power. By its charter its directors were given power to keep the dam and race-ways in good order and repair, and to do such other acts and things as they might deem necessary for the preservation and maintenance of said water-power; to regulate the flumes and gates of the race-way, so as to prevent each of said stockholders from drawing or using more water than properly belonged to him; to direct the manner of drawing the water from the dam and race-ways in time of low water, so as to insure to each stockholder a full and just proportion of said water-power. The charter also provided that the expense of making general repairs and the other expenses incurred by the board in the performance of its duties, should be ratably assessed upon the stockholders " in proportion to the number of square inches owned or represented by them respectively," and also for the manner of making such assessments. It will therefore be seen that the object for which the corporation was created, was, not to hold and own the water-power, but to keep all the appurtenances in repair and regulate the use of the water among those who really owned it.

In the case of The Elgin Hydraulic Company v. The City of Elgin, 74 Ill. 433, which was a suit between the same parties brought by the Hydraulic Company against the city

to recover for damages sustained through an act of the city of Elgin in carrying a certain sewer belonging to it into a race-way on the east side of the river, it was said by the court:

"The evidence showed that the Elgin Hydraulic Company was composed of the owners of the water-power at Elgin, who were its stockholders; that the company did not own the race, but that it was built for the benefit of all the owners of water-power on the east side of Fox river. * * The objection taken to the sufficiency of the proof is, that the race did not belong to the company; that it had no interest in the race, but was a mere agency for the repair of it, and hence had no right of action in itself, for the injury done to the race. But the company was a corporation created for the special purpose of keeping this race-way in repair, had the exclusive charge of it for such purpose, was given power to raise money therefor, and was given the right to sue. The obstruction of the race-way in the manner shown, although the company had no property interest in it, was a pecuniary damage done to the corporation itself, in necessitating, in the performance of its statutory duty, and actually causing, the expenditure of its own money for the removal of the obstruction. * * * This action is not for damage done to the owner of any mill in lessening his power, but only to recover for the expense of removing the obstruction. The mill-owners' damage suggested would be a different one."

It will be seen that the Supreme Court in the above case held that the Hydraulic Company did not own the race and had no property interest in the race-way, and that its right to sustain the action was only by reason of the fact that it was one of its duties to keep the race-way in good order and repair, as provided by its charter; but the court also intimates that for any injury done to the owner of any mill in lessening his power, the damage would accrue to the mill owner himself and not to the Hydraulic Company.

The fact that the supply of water was diminished in the race-ways would not, in any manner, prevent the board of directors of appellee from keeping the dams and race-ways in good order and repair, regulating the supply of water as between the several stockholders, or exercising any of the

other powers conferred upon them by the charter. It is a general rule that when injury is done to property a recovery for the same can only be had by some person who has an estate in the property, legal or equitable, which the law recognizes. Peoria Ins. Co. v. Frost, 37 Ill. 333.

Appellee being merely an agent of the owners of the water-power, organized for their convenience to carry out certain defined purposes, and having no estate of its own, legal or equitable, in the water-power, could not legally maintain this suit against appellant for damages resulting from the diminution of the water supply to the real owners of the water-power.

While in our view of the case the action could not be maintained by appellee, for the reason above stated, yet there are also reasons based upon the merits of the case why, in our opinion, appellee was not entitled to recover. The city of Elgin, by reason of its purchase of the property along the river, where its water-works are located, became a riparian owner, and even if Fox river, as contended for by counsel for appellee, is to be treated in every way as a private stream, then the city is entitled to the use of its proportionate share of the waters of the river. There is no evidence in the record to show that the city has at any time taken more than its lawful share of such waters, and such being the case, no action would lie against it by the owner or owners of the water-power, on account of any diminution in the volume of the water, by reason of the fact that the city had diverted a portion of the same. But there are broader grounds yet upon which this decision may be based. The owners of the water-power at Elgin maintained the mill-dam by reason of the charter granted to them by the State, and their claim of injury depends upon alleged property rights, arising from and resting only upon their right to maintain said dam and control the supply of water afforded by the same. It is claimed by appellee that the act of 1839, giving Gifford and Kimball authority to construct the dam, was in the nature of a contract by the State with them, their heirs and assigns, and could not be revoked

by the State, after they had acted upon it and built the dam; that therefore the act of 1840, declaring Fox river a navigable stream, so far as it affected the water-power created by the dam, must be considered as subject to the rights conferred upon Gifford and Kimball, their heirs and assigns, by the said act of 1839.

In the case of I. C. R. R. Co. v. Ill., 146 U. S. 387, where the question of the right of the legislature to sell or give away the submerged lands in Lake Michigan, along the Chicago lake front, was in question, it was held that such attempted cession of ownership was inoperative to affect, modify, or in any respect to control the sovereignty and dominion of the State over the lands, and that any attempted operation of the act was annulled by a subsequent repealing act. Also that " there can be no irrepealable contract in the conveyance of property by a grantor in disregard of a public trust, under which he was bound to hold and manage it."

Our Supreme Court has also in a measure passed upon the question of the power of the legislature to control the use of a stream in a case involving the right to maintain a dam in this same river. In the case of Parker v. The People, 111 Ill. 581, it is said:

" When the dam was erected it was without right, and by a trespass on the lands of the government, and before Michael C. Parker purchased the land of the general government, the legislature had, by enactment, in 1840, declared Fox river a navigable stream and public highway. It then follows that he purchased subject to the power of the legislature to control the use of the stream to the same extent it had to regulate the use of other streams in the State which were navigable in fact."

The facts in that case were somewhat similar to those in the case at bar, as Gifford and Kimball erected their dam in the year 1837, but did not obtain title to the adjoining lands until 1842, two years after the Fox river had been declared navigable. The special act giving Gifford and Kimball authority to erect the dam was not, therefore, in the nature of a contract, which could not be modified or

annulled by the State, but was in the nature of a license, which could be revoked by a subsequent act of the legislature. The State, by the act of 1839, did not part with any right it may have had to control said stream for the benefit of the general public.    It is true that, according to the evidence, Fox river is not a navigable stream in the sense that it may be used to any profitable extent for commercial purposes. It was, however, declared a navigable stream in law by the act of 1840, and, so far as the rights of the public were concerned, it was recognized as such by our Supreme Court in the case of Parker v. The People, *supra*, where it is declared that "after the passage of that act Parker maintained his dam as an obstruction to a navigable river, and in violation of that law, because by the passage of that act it became public in its use, and its use was under the control of the legislature."    As by the act of 1840 the Fox river had become public in its use, the general public could not afterward be prohibited or curtailed in the use of the waters of the same by private owners of riparian rights who desired to make use of the same for their pecuniary gain, in propelling machinery.

In the case of Evans v. Merriweather, 3 Scam. 494, it was said, respecting the wants of man in regard to water, in a case relating to the right to use the water in a stream :

" These wants are either natural or artificial : natural are such as are absolutely necessary to be supplied in order to his existence; artificial, such only as, by supplying them, his comfort and prosperity are increased.    To quench thirst, and for household purposes, water is absolutely indispensable.    In civilized life, water for cattle is also necessary.    These wants must be supplied or both man and beast will perish.    The supply of man's artificial wants is not essential to his existence; it is not indispensable; he could live if water was not employed in irrigating lands or in propelling his machinery."

In the case of City of Auburn v. Union Water Power Co., 90 Me. 576, it is said :

" Health is of more importance than wealth, and cleanliness is next to godliness; and we hold that the right of the

people to an abundant supply of pure water, by which their health and cleanliness may be secured, is paramount to the right of mill owners to have the water for propelling their machinery, and that to the extent that the two rights conflict, the latter must yield."

We are therefore of opinion that the right of the public residing along Fox river to take water out of the same for domestic, sanitary and fire purposes, is paramount to the right of the owners of said water power to use the same for the purpose of propelling the machinery of their mills. For the reasons above stated, the judgment of the court below will be reversed.