**CAMDEN AND ROCKLAND WATER COMPANY**

v.

**TOWN OF HOPE, et al.**

Supreme Judicial Court of Maine.

Argued May 2, 1988.

Decided June 30, 1988.

County, vacating the decision of the Hope Zoning Board of Appeals that affirmed the denial of the Company's application for a permit to construct a pumping station that will allow it to withdraw water from Fish Pond. We affirm the judgment.

## I. BACKGROUND

Under the terms of a private and special law enacted in 1887, the Company was authorized to withdraw water from "Fish's Pond" for the purpose of supplying the inhabitants of various towns with drinking water. P. & S.L. 1887, Ch. 107. (Fish's Pond is now known as Fish Pond). In 1985, the Company sought, for the first time, to exercise its right to withdraw water from Fish Pond. In order to withdraw the water, it would be necessary for the Company to erect a pumping station within the shoreland area. The structure that the Company sought to erect consisted of a concrete pad with a pump on top and an eight inch pipe that would run from the pump into the pond. Because Fish Pond is a great pond, the Town is required to regulate the uses that may be made of its shoreland areas. *See* 38 M.R.S.A. §§ 435–447 (Pamph. 1987). In order to obtain a building permit, anyone wishing to erect a structure within the shoreland area must demonstrate compliance with the Town's zoning regulations. The Hope Code Enforcement Officer denied the Company's application for a permit to build the pump for failure to demonstrate compliance with the regulations.

The Company ultimately appealed the adverse decision to the Town's Zoning Board of Appeals. After a public hearing, the Board affirmed the denial of the permit, finding: 1) that the proposed structure violates the 75 foot setback requirement of section 6.10(J) of the ordinance; 2) that the noise level of the pump would be unacceptable and disturb the shoreline area; 3) that the water company had not established that the withdrawal of water from Fish Pond would not adversely affect the aquatic, wildlife and fish populations of the pond and would not exacerbate the hazardous chemical pollution problem in adjoining

Joseph B. Pellicani, (orally), Esther R. Barnhart, Strout, Payson, Pellicani, Hokkanen, Strong, & Levine, Rockland, for plaintiff.

Paul L. Gibbons, (orally) Cathy G. Morgan, Calderwood, Ingraham & Gibbons, Camden, for defendants.

Before McKUSICK, C.J., ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

The Town of Hope appeals and Camden and Rockland Water Co. cross-appeals from the judgment of the Superior Court, Knox

Quiggle Brook. The Company filed a timely complaint for judicial review of the Board's decision.

The Superior Court concluded that the Board's denial of the Company's building permit was not supported by the record and that the withdrawal of water from Fish Pond was subject to regulation by the State alone. The court vacated the Board's decision and directed the issuance of the permit. The Town filed a timely appeal and the Company cross-appealed. Because we agree with the Superior Court, we do not find it necessary to address any of the issues raised by the Company on its cross-appeal.

## II. THE BOARD'S DECISION

When the Superior Court acts as an appellate court reviewing the action of a zoning board of appeals, we directly examine the record as it was developed before the Board. In addition, in reviewing the record, we will not substitute our judgment for the Board's. Rather, our review is limited to determining whether the Board's action was arbitrary, not in accord with law, or not supported by substantial evidence in the record. *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 104 (Me.1984).

### A. THE SETBACK REQUIREMENT

■ Section 6.10(J) of the Town's zoning ordinance provides: "All structures in the General Development ... District[ ] shall be set back at least 75 feet from the normal high water mark of ponds and lakes and at least 58 feet from the center line of any state or town road and 20 feet of any side or rear lot line." The Board found that this requirement was not satisfied because the proposed structure includes a pipe that would extend from the concrete pad into the pond and would come within 75 feet of the normal high water mark. The Company argues that it was error for the Board to find that the pipe was part of the structure and since the structure itself, i.e., the concrete pad and pump, is not within 75 feet of the high water mark, the

Board's decision was wrong. We agree with the Company.

The term "structure" is not defined in the Town's shorelands zoning ordinance. It is evident from other provisions in the ordinance, however, that the Board erred in concluding that the structure does not meet the setback requirement because the pipe extends into the water. Section 6.10(G) provides:

Piers, Docks, Launching Ramps, and *other Structures and Uses Projecting into Water Bodies.* In addition to Federal and/or State permits which may be required, such structures and uses shall conform to the following:

a. Access from shore shall be developed on soils appropriate for such use and constructed to prevent erosion.

b. The location shall not interfere with developed beach areas.

c. The facility or use shall be located so as to minimize adverse effect on fish and other aquatic life.

d. The structure shall be no larger than necessary to carry on activity and be consistent with existing use and the character of the area.

Under section 6.10(G), if the structure projects into the pond, there is no requirement that it not come within 75 feet of the high water mark.

Moreover, the enabling statute that requires the Town to enact a shoreland zoning ordinance exempts structures that extend into the water from compliance with a setback requirement. Under the relevant provision, structure is defined as follows:

'Structure' means anything built for the support, shelter or enclosure of persons, animals, goods or property of any kind, exclusive of fences. Notwithstanding any provisions in a local ordinance to the contrary, all new principal and accessory structures shall meet the set-back requirements from normal high watermark of any water body, *except structures which require direct access to the water as an operational necessity, such as piers, docks and retaining walls....*

38 M.R.S.A. § 436(5) (Pamph. 1987) (emphasis supplied). Because the pipe requires

direct access to the water as an operational necessity, its placement is exempt from the setback requirement. Consequently, it was error for the Board to deny the permit on the basis of the setback requirement.

## B. NOISE POLLUTION

■ Section 4.6 of the ordinance provides: "No new commercial enterprise, or expansion of an existing enterprise, shall be permitted if by reason of ... noise ... it is detrimental to the well being of the Town or adjacent properties." In its decision the Board concluded that the noise level of the pump would be unacceptable because it would disturb the shoreland area. At the same time, the Board conceded that if the pump were enclosed, there would be no problem. Since the Company agreed to enclose the pump in order to alleviate the problem, the Board acted arbitrarily in denying the Company's application because the noise level would be unacceptable.

## C. WITHDRAWAL OF WATER

■ The final reason the Board gave for denying the Company's application for a building permit is because the Company refused to set a limit as to the amount of water it would withdraw from the pond. The Board concluded that if the Company withdraws too much water, the pollution problem in Quiggle Brook could be exacerbated. In addition, according to the Board, unlimited withdrawal of water could have an adverse effect on the fish, birds, aquatic and other wildlife in the pond and surrounding area.

The Company contended and the Superior Court agreed that the Legislature's grant of the right to withdraw water from Fish Pond deprived the Town of Hope of authority to regulate that withdrawal. On appeal the Town relies on the exercise of its police powers to regulate the Company's withdrawal of water from Fish Pond. Although we recognize that a utility acting under the authority of a legislative charter

is generally subject to a town's exercise of police powers, the exercise must be consistent with Maine's home rule law, 30 M.R.S.A. § 1917 (1978) (section 1917 was repealed and replaced by P.L.1987, ch. 583, §§ 9, 13; that measure was repealed and replaced by P.L.1987, ch. 737, §§ 1, 2, to be codified at 30–A M.R.S.A. § 3001). We conclude in the circumstances of this case, the Town exceeded its authority.

Article VIII, part second, section 1 of the Maine Constitution, provides:

> The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by the Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.

Pursuant to section 1, the Legislature enacted the home rule law permitting municipalities to exercise only those powers or functions that the Legislature has the power to grant and has not denied "either expressly or by clear implication." We have interpreted that limitation on municipal home rule as denying towns the authority to act in areas preempted by comprehensive, state-wide schemes. *See Ullis v. Town of Boothbay Harbor,* 459 A.2d 153 (Me. 1983); *Schwanda v. Bonney,* 418 A.2d 163 (Me. 1980). In the case at bar, the Town argues that the Company's charter "is not a comprehensive and exclusive regulation scheme." The Town cites *Tisei v. Town of Ogunquit,* 491 A.2d 564 (Me. 1985) for the proposition that the charter of a local utility is not the type of enactment that would preclude a town's regulation of the utility. If the Company were relying only on a general grant of authority to operate a water company contained in its charter, we might agree that our decision in *Tisei* supports the town's position. The Company, however, relies on the express grant by the Legislature of the right to withdraw water from a state owned great pond.[1] Although that grant is unlike the general statutes at issue in *Ullis* and

---

1. *See Auburn v. Union Water Power Co.,* 90 Me. 576, 587, 38 A. 561 (1897); *Opinion of the Justices,* 118 Me. 503, 106 A. 865 (1919).

*Schwanda,* the "clear implication" of that specific grant is to preclude the exercise of regulatory control by the Town of the manner or extent water is withdrawn from Fish Pond. The Superior Court correctly concluded that the environmental impact of withdrawal of water pursuant to the legislative grant is subject only to control by the state.[2] Thus, we do not reach the question whether the record supports the Board's determination that the water company had not shown that the withdrawal of water would not adversely affect the environment.

The entry is:

Judgment affirmed.

All concurring.

---

2. The state has in fact exercised its retained power to regulate the use of great ponds. 38 M.R.S.A. § 393 (1978). At the time this case was argued before us, the Board of Environ-mental Protection had not given its required approval for the Company to withdraw water from Fish Pond.