## John Low *versus* Francis Knowlton.

By the common law of this State, as at first adopted by a colonial ordinance, and continued by usage after the ordinance had been virtually abrogated, the beds of creeks, less than one hundred rods in width, where the tide ebbs and flows, became the property of the owners of the land through which they passed, except that such proprietors are not allowed " to stop or hinder the passage of boats, or other vessels, in or through any creeks or coves to other men's houses or lands."

Any such proprietor, therefore, may make use of the land forming the bed of such creek, and of the space above it, provided he does not obstruct such navigation.   Any such obstruction would be a public nuisance; and though abateable by any one, or indictable as such, could not form the subject of an action at the suit of an individual, unless he could make it appear, that he had sustained special damage thereby.

THE parties agree to the following statement of facts, viz :—

" This is an action on the case for obstructing a water passage claimed by the plaintiff on a creek emptying into Kennebec river in the village of Bath, into which the tide flows above the plaintiff's lot, which is about 85 rods from said river.

" Feb. 10th, 1797, Edward H. Page, conveyed to John Low, the plaintiff, and one Elijah Low, a lot of land in Bath, fronting seven or eight rods on Washington Street, and ten rods on Centre Street, which has ever since been occupied by them and others under them, and which covered said creek, near the upper part.   Sept. 15, 1817, McLellan and Turner levied their execution by metes and bounds, on said John Low's undivided half part of said lot bounded six rods on Washing-

ton Street, and 105 feet on Centre Street, which covered the water passage in said creek ; reserving however in said levy, " the water privilege through the same, of eighteen feet width as heretofore used, to be kept open for the use and benefit of the said McLellan and Turner, and all persons interested therein." Jan. 29th, 1819, said McLellan and Turner levy their execution on said Elijah Low's undivided half of the same lot last described, reserving in said levy " the water way through the same, of eighteen feet width as heretofore used, to be kept open for the benefit of all persons interested in the premises." In April, 1824, McLellan and Turner conveyed the lot levied upon to Tileston Cushing with the same reservation as in the levy on Elijah's half, from whom said Knowlton has had so much of the same as he occupies, and as includes said water way conveyed to him with the same reservation as last before. On the 17th of Feb. 1834, said Elijah's half of so much of said purchase from Page as had not been thus levied upon, was conveyed to said John Low.

" Said Knowlton's lot is next below the plaintiff's on said creek, through both of which the tide flows, and ebbs out entirely at about half tide. At the time of the purchase from Page there was no obstruction in any part of said creek. About forty years ago, Centre Street was made, with a bridge over said creek, leaving a passage under the same, eighteen feet wide, a few rods below said Knowlton's lot. Soon after, about forty years ago, Front Street was made with a bridge over said creek, with a similar passage way, about 50 rods below Centre Street. After this, within two or three years, Washington Street was built, with a similar bridge and passage adjoining said Knowlton's lot below. All these roads were laid out as county or town roads.

" In a deed from Page to the Lows, was the following reservation, " excepting and reserving to the said Edward H. Page and his heirs, liberty at all seasons of the year, to pass to and from the landing place in the way used by the grantees." Said Lows, and all claiming under them, have used to pass up and down said creek, every year to the date of the writ, and have

had a landing place on the remainder of said Page purchase, now owned by said John Low.

"The passage on the lots of the plaintiff and defendant was always kept open till April, 1824, when Cushing, who then owned the defendant's lot, laid some string pieces across it, to pile boards upon, who was however forbidden by the plaintiff. In March, 1843, the defendant moved a building on to his lot, covering said passage, wholly across the same. There is, however, a passage way under said building, as high as that under the adjoining street, being two feet above high water mark, and eighteen feet wide.

"Now the parties agree, that if on the above facts, with such as a jury might reasonably infer therefrom, the plaintiff is entitled to recover, judgment shall be rendered in his favor for one dollar damages, and costs; otherwise, for costs for the defendant.

"Randall & Booker, Att'ys to plaintiff.
"Tallman & Richardson, Att'ys to defendant."

*Randall & Booker*, for the plaintiff, contended that as the obstruction complained of, was over a tide water creek, navigable for valuable purposes, and which had been navigated for many years, those obstructions, whether caused by counties, towns or individuals, were a nuisance. *Arundel* v. *McCullock*, 10 Mass. R. 70; *Com.* v. *Charlestown*, 1 Pick. 180; *Kean* v. *Stetson*, 5 Pick. 492. The erection of the bridges, therefore, afford no justification to the defendant. But were those bridges legally placed there, every new obstruction would increase the difficulty, and render the property of those above, of less value.

The defendant claims under levies on land of the plaintiff in which an open passage, is reserved. An open passage means an uncovered passage. Besides, this was navigable water, and the passage was an open one by the common law, and by usage. As the defendant had no right to place the obstruction where he did, the plaintiff is entitled to recover.

*Tallman & Richardson*, for the defendant, said that the plaintiff, to maintain this action, must show, that he has a

private right in the passage way alleged to have been obstructed and that the defendant has injured him in the enjoyment of it.

The defendant contends, in the first place, that the plaintiff has no rights in the water passage. Here the counsel examined the deeds and levies, and insisted that this position was correct.

But if any right was attempted to be reserved to others in the levies, such reservation is inoperative and void. A levy merely passes a debtor's estate to the creditor, but cannot pass property to a third person.

In the second place, it is contended, that if the plaintiff has a right of passage over the defendant's lot, it has not been obstructed by the defendant. All the right the plaintiff can claim is, that of using tide water flowing over the premises of the defendant, when there is water sufficient for him so to do. When the water ceases to flow over the land of the defendant, all right of the plaintiff to pass over ceases also. The plaintiff's supposed right, is subject to the beneficial use of the owner of the land. Here the building placed over the water by the defendant was as far above the surface of the water as either of two bridges below, and could not injure the plaintiff, as whatever could pass under the bridges could also pass under the building above. *Atkins* v. *Boardman*, 20 Pick. 291, and same case, 2 Metc. 457.

And in the third place, the plaintiff cannot recover, because he has not shown, that he has been injured in, or prevented from, using said passage way, or shown any special damage on account of the pretended obstruction. It is well settled, that no action will lie, against any one obstructing tide waters or any other public highway, by an individual, unless he alleges and shows some special damage to himself by reason of said obstruction.

The opinion of the Court was drawn up by

WHITMAN C. J. — By the agreed statement of facts it appears, that this is an action of the case, alleging an ob-

struction of a water passage, claimed by the plaintiff, on a creek, into and from which the tide ebbs and flows, extending about eighty-five rods from Kennebec river, through the lands of both the parties, the plaintiff's being next above and contiguous to the defendant's. The creek, it also appears, is empty, at about half tide, and at full tide, is navigable for boats and gondolas, to the plaintiff's land, where he has a landing place. The defendant, it appears, has erected a building on his land extending across the creek, the sills and sleepers of which, are about two feet above the water, at full tide.

Such creeks, according to the common law of England, would belong to the public; and individuals could acquire no property, in the bed of them, except by legislative grant, or prescription; and whoever should obstruct the navigation of them would be indictable, as the author of a public nuisance. But by the common law of this State, as at first adopted by a colonial ordinance, and continued by usage, after the ordinance had been virtually abrogated, the beds of such creeks became the property of the owners of the land through which they passed, except that such proprietor is not allowed " to stop or hinder any passage of boats or other vessels in or through any creek or cove to other men's houses or lands." Any such proprietor, therefore, may make use of the land forming the bed of such creek, and of the space above it, provided he does not obstruct such navigation, over and upon it. Any such obstruction would be a public nuisance ; and though abateable by any one, or indictable as such, could not form the subject of an action at the suit of an individual, unless he could make it appear, that he had sustained special damage thereby. 3 Black. 219.

But in this case it does not appear, nor is it clearly inferable from the facts stated, that the erection in question, is a public nuisance ; and it is not understood to be alleged, that the plaintiff has sustained any particular injury therefrom. The reservations contained in the conveyances, under which the parties claim, cannot aid the plaintiff. These seem to be, to the extent to which the law would have furnished security, and

nothing more.    The subjects here alluded to, are fully discussed and elucidated in Angell on Tide Waters, ch. 8.

*Plaintiff nonsuit.*