LILLIAN F. CYR, By LARRY H. CYR,
Her Father and Next Friend,

*vs.*

GEORGE E. LANDRY, M. D.

Penobscot.   Opinion December 6, 1915.

*Conflicting Testimony.*     *Drainage Tube.*     *Malpractice.*     *Negligence.*
                             *Surgical Operation.*

An action for malpractice for negligently performing an operation for pleurisy, inserting a drainage tube in the side and for improperly attaching said tube.

1. There was no allegation of malpractice for failure to discover the tube if permitted to enter the cavity through the carelessness of some person other than the defendant.

2. The only issue, therefore, before the court, under the declaration is whether the tube was improperly attached by adhesive plasters, as alleged. Upon this issue, the evidence is overwhelming that the verdict was clearly wrong.

3. But the case was tried and presented to the jury by the presiding Justice upon another issue also, namely, whether, if the tube had entered the plural cavity through accident, or the fault of another than Dr. Landry, did he then exercise such care to discover whether it was in the cavity as ordinary professional skill and knowledge required? Having been thus tried this issue may be properly regarded as before the court. *Held:* the verdict should also be set aside upon this issue.

4. In view of the fact that it was impossible for the tube to enter the cavity unless the safety pin, which fastened it in its place, was removed, and the defendant was misled by the denial of Mrs. Cyr that she had interfered with the dressing, it is the opinion of the court that when the doctor directed her several times to take the child to the hospital for an operation, he exercised such care, under the circumstances in this case, as ordinary medical skill and knowledge required. The verdict should be set aside on this issue.

On motion for new trial by the defendant. Motion sustained. New trial granted.

This is an action on the case to recover damages for malpractice in securing a drainage tube which had been inserted in the side of Lillian P. Cyr for the purpose of drainage of the incision in the operation for pleurisy. Plea, the general issue. The jury returned a verdict for plaintiff for $3000. The defendant filed a motion for a new trial and also had certain exceptions, which do not appear to have been considered.

The case is stated in the opinion.

*James D. Rice and W. H. Pattangall* for plaintiff.

*Morse & Cook,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, BIRD, HALEY, HANSON, JJ.

SPEAR, J. This is an action of malpractice for a surgical operation performed upon the plaintiff in which it is alleged that the defendant "was employed to operate upon her side for pleurisy, and later for the purpose of draining said incision a tube was inserted and improperly attached by adhesive plaster to the outer surface of the body. The drainage of said incision moistened

the adhesive plaster and permitted the tube to enter the body of the plaintiff and remain there a long period of time, to wit: from October, 1908 until March 24, 1912." There was no allegation of malpractice for failure to discover the tube if permitted to enter the cavity through the carelessness of some person other than the defendant. The only issue therefore, before the court, under the declaration is whether the tube was improperly attached by adhesive plasters, as alleged. But the case was also tried upon the theory of malpractice in failing to discover the tube, and this issue will be later discussed.

Upon the first issue, if the evidence warranted the jury in finding that the tube was secured as alleged, the verdict should stand. If upon the evidence they were not warranted in so finding, the verdict should be·set aside. We think the verdict was clearly wrong.

The case shows that Lillian P. Cyr, for whose benefit the suit was brought, was on the 16th day of October, 1908, operated on by Dr. Twitchell of Old Town for the removal of fluid from the pleural cavity, in the treatment of which it was necessary to insert a tube for the drainage of the cavity. The tube was introduced by inserting it between the ribs, through the incision made to drain the cavity. Then gauze was put around the tube and the tube "left sticking up through the gauze." Dr. Twitchell describes the manner in which he proceeded to fasten the tube, as follows: "Then I took an ordinary safety pin, something like an inch and a half or two inches long, putting it through the tube and through the gauze at the same time, clasping or fastening it; outside of that I took other gauze and put it on loosely, and around the whole body of the child was another bandage, which was pinned; that constituted the dressing." He then says that he proceeded to put over this gauze a plaster on each side coming across—"you might say uniting the ribs, above and below on each side of the ribs, so it laid across like that, which held that firmly and securely from the gauze I put on top as a top dressing, and that was put on for the purpose of absorbing the pus or fluid which would naturally come out through the tube." Dr. Twitchell was assisted in the performance of this operation by Dr. Landry, the defendant. Dr. Twitchell continued in charge of the case until October 31, when he was relieved. In his

treatment of the child from the 15th to the 31st of October he said that Mrs. Cyr, the mother, thought he was coming too often.

Dr. Landry seems to have been called not because of dissatisfaction with the skill of Dr. Twitchell, but because the mother, speaking the French language, was unable to talk freely with him, and it was thought advisable to employ Dr. Landry, who spoke French and with whom she could converse. He took charge of the case November 2, 1908. As to just what he did the first day he took the case, or whether it was the first or second of November, seems of no great materiality. The important question is the whereabouts of the drainage tube which Dr. Twitchell, when he last saw the case on October 31st, had left fastened with a safety pin, through the gauze and the tube, in the manner in which he had first secured it. If that drainage tube, when Dr. Landry came, was then in the body of the child, he was not guilty of malpractice. If he took the tube out and attempted to secure it by the mere use of sticking plasters, and, on this account it dropped into the cavity, he was guilty. The testimony in this case was conflicting, but the mere fact of conflicting testimony is not a sufficient basis, in all cases, for the foundation of a verdict. While the general rule is that when the testimony is conflicting, the verdict must stand, yet the term "conflicting" in the rule is subject to interpretation. Our court have construed the rule as follows: "It means that there must be substantial evidence in support of the verdict,—evidence that is reasonable and coherent and so consistent with the circumstances and probabilities in the case as to raise a fair presumption of its truth when weighed against the opposing evidence. When it is overwhelmed by the opposing evidence, the verdict cannot stand." *Moulton* v. *Railway Company,* 99 Maine, 508. See also cases cited. The plaintiff's testimony comes from Mr. and Mrs. Cyr, the father and mother of the plaintiff; the plaintiff, herself, who at the time of the operation was five years of age; and Mrs. Lena Cyr, a sister of Mrs. Cyr, who claims she was present at Dr. Landry's first visit. The plaintiff's version is, that Dr. Landry when he dressed the operation took the tube out and washed it, and when he replaced it secured it with adhesive plaster instead of a safety pin; that in about a week, or after several calls, the doctor discovered on making a call that the tube was missing; that they examined the bedding, dressings, etc., without finding the tube.

This version was practically corroborated by the other witnesses named.

Dr. Landry's version is, that he was called to see the child on November second, two days after Dr. Twitchell's last visit; that as he went into the house the mother informed him that the tube was lost; that he removed the outside dressings and looked for the tube but was unable to find it; that they looked around and tried to locate it without success; that the mother then told him she thought it must have dropped into the child's body; that he told her he did not see how that could have happened, if it was left by Dr. Twitchell as he had seen him fix it, at the original operation; but that if she was at all suspicious the proper thing to do was to look for the tube and advised her to take the child to the hospital and have it looked into. Which version is true? The crucial test of truth is sometimes found not in what people say, but in what they do as well; and this is especially true when what they do and what they say transpire before anything has arisen to create a motive for evasion or falsehood; for it is common experience, after personal interests are involved, that people will exaggerate or falsify to advance or protect their interests. It is likewise a matter of common knowledge that people generally speak the truth, and act in harmony with it, when no such interests are at stake and no motive is found for misrepresentation.

We think we are justified in the assumption, when Dr. Landry was called to attend this little child, that no interest had then appeared on his part tending in any way to induce him to act or speak otherwise than in exact harmony with the situation as he found it, and as any physician of twenty-two year's experience would have done. On the other hand no interest had then appeared which was calculated to operate on the mind of the mother tending to influence her to speak or act otherwise than in harmony with the truth.

With this premise before us as a starting point, it may be pertinent to inquire, whose testimony, the plaintiffs or the defendants, is supported by the probabilities? and whose fraught with inherent improbabilities? Whose testimony is in harmony with what one would naturally expect to be done? and whose inconsistent with it? Whose bears the impress of truth? Tested by this standard, the

defendant's version of the history of the loss of this tube, when he was called, is in harmony with all the probabilities surrounding the case and substantiated by what one would expect to happen, under the circumstances; while the plaintiff's version is incompatible with the probabilities and inconsistent with what one would expect to happen. A brief analysis of the facts will show the reasons for these conclusions.

An operation had been performed on this child, a tube inserted and fastened in the usual and safe way, and the device employed certainly indicates that there was no simpler or easier method of fastening the tube than the one used. It was also safe. When Dr. Landry first came he says the mother at once said the tube was lost. That statement was in harmony with the truth, for the tube was lost inside the child. Did she make this statement to Dr. Landry? Did she make it to the many other witnesses who have testified that she told them that she so stated to Dr. Landry? to one of them before Dr. Landry had called at all, as a reason why she was to call him? Nearly six years later after this suit had been brought, she denies having made any such statements to Dr. Landry or to the witnesses. But the evidence seems to be overwhelming in favor of the conclusion that she made the statements with reference to the loss of the tube which Dr. Landry and the other witnesses attributed to her. Upon this contradiction of the plaintiff, the defendant and his witnesses are corroborated by one circumstance which is almost convincing, and if it depended for proof upon the testimony of Dr. Landry alone, might be regarded as a most cunning invention to suppport his version. But it does not so depend and is so corroborated by Dr. Twitchell that it must be conceded to be a proven fact. It it this. Upon being informed that the tube was lost, and not knowing but that it might have been removed by Dr Twitchell without the knowledge of Mrs. Cyr, Dr. Landry says that he at once proceeded to find Dr. Twitchell and ask him whether he left the tube in the incision when he last visited the case. His testimony upon this point is brief and as follows: "I tried to find out the condition the tube was in the last time the dressing was made. Mrs. Cyr told me that the dressing was just as Dr. Twitchell had always left it; there was a safety pin into it stuck through the gauze and through the tube. I then thinking that for some reason or another,

without Mrs. Cyr knowing it, Dr. Twitchell had removed the tube and I went to ask him, to find out whether he had or not. Dr. Twitchell told me that when he left the child on the 31st that the tube was attached exactly the same as it was the day of the original operation; that there was a safety pin stuck through the gauze and through the tube." Dr. Twitchell in his testimony corroborates this statement, in which he says on the second day of November, two days after he left the case, Dr. Landry found him upon the streets and inquired if he removed the tube when he left and that he informed him that he left it there as usual and fastened as usual. After seeing Dr. Twitchell, he says he then got another tube, went back to the house and put it in with a safety pin on the end of it.

At this juncture we find a physician of twenty-two years' experience called to this case in which either the tube was in place as Dr. Twitchell left it, or replaced by himself. If it was in place, and replaced on November second, as all agree, when he first dressed the operation, is it possible to understand or conjecture, what motive prompted him to go to Dr. Twitchell to inquire about a thing, that was absolute before his eyes, and was before them, according to the testimony of Mrs. Cyr, for nearly a week after he saw Dr. Twitchell? There is no mistake about the version of Mrs. Cyr and all her witnesses. They all saw alike. Her version was their version. She says: "He (Dr. Landry) took off the bandage . . . and washed the tube and put it back." Then further: "The tube disappeared through the first week of treatment. The doctor made about four calls before the tube disappeared." And yet, with this tube either directly before his eyes, fastened as Dr. Twitchell had left it, or as he, himself, had replaced it, he departs from the bedside of his patient to find out what had become of it, and makes an inquiry of Dr. Twitchell to that end. We are unable to conceive of such conduct on the part of a sane man. On November second there could be no possible anticipation of an action for malpractice by Dr. Landry, even if the plaintiff's version was true, as the tube was not then lost, and he could have no reason to assume it might be lost, even though fastened as the plaintiff claims. Accordingly, Dr. Landry's abnormal conduct was enacted without cause or reason. The plaintiff's contention that the tube was not lost, and the defend-

ant's concurrent inquiry of Dr. Twitchell whether it was, are absolutely incompatable, and one story or the other is wrong. Which? Upon the presumptive truth of the testimony of Dr. Landry and Dr. Twitchell as to Dr. Landry's inquiry regarding the tube this circumstance is overwhelmingly in favor of the defendant.

But it may be contended that the jury had a right to disbelieve the story of Dr. Landry and Dr. Twitchell in regard to Dr. Landry's inquiry. Upon the assumption that this issue is an open question, then it becomes important to discover whose version the other witnesses, the other circumstances and probabilities corroborate. First, is it probable that Dr Landry secured the tube, as the plaintiff contends? All the medical testimony in the case, including Dr. Landry, himself, fails to recall a case in which a tube was ever fastened in the way the plaintiff says it was; and further, that it would not be a proper way. As before stated, the use of a safety pin was the safest, simplest, and easiest way to secure the tube. At the very threshold of the case, therefore, arises the improbability that Dr. Landry departed from the usual practice to adopt a method, up to that time, unknown. And not only this improbability, but the plaintiff says, when the child was brought from the hospital where the tube had been removed, that Dr. Landry, who must have known that his careless method had permitted one tube to drop into the patient's body, again took out the safety pin and employed adhesive plasters to secure the replacement of the tube,—precisely what he had done before. This seems incredible. Again, if that tube was lost within the first four visits of Dr. Landry, and he fastened it the way the plaintiff said, he knew, what even a layman would strongly suspect, that the tube had dropped into the cavity. Assuming this to be the fact, is it then probable that he would have hesitated to proceed either to remove the tube himself, or take the patient to the hospital, where by the simple operation of stretching the old incision the tube was removed with forceps? This would have been the natural thing for a family physician to do. No reason or motive appears at this stage of the case, why the defendant should have done otherwise, while all the probabilities are in favor of his doing so. He could not have been preparing for a defense at this time, accordingly no motive appears for the unreasonable course, which, upon the above assumption, he must have pursued. It is

highly improbable that he knew or suspected the tube was in the cavity, a thing he must have known if the plaintiff's version is correct. Not only do these circumstances support the testimony of Dr. Landry and Dr. Twitchell in regard to the inquiry of November second, but several witnesses, so far as appears, without interest or prejudice, corroborate it, and flatly contradict the plaintiff.

It may make it clearer to here restate that Mrs. Cyr denied that she knew the tube was lost before Dr. Landry came on November second, or told him that it was lost, at or after that time. Upon this issue of fact Margaret Huges, a trained nurse, contradicts her; Alice Martin, a neighbor, contradicts her; Amanda Cole contradicts her; Ida Graham contradicts her; Sadie Shoratte contradicts her. This witness lived in a part of the Cyr house. At the time these conversations of Mrs. Cyr, testified to by these witnesses, were alleged to have been made, Mrs. Cyr had no motive to tell other than the truth. Nothing was then pending except the ordinary conditions surrounding the case. Her alleged statements were all reasonable, and, what is very convincing of their utterance, in perfect accord with the truth of the situation as it actually existed. The tube was lost.

The evidence is so overwhelming against the plaintiff's contention regarding the defendant's negligence for the loss of this tube, that the jury, for some reason, so failed to comprehend the force and effect of the evidence, when properly considered, that their verdict, upon this issue must be set aside.

As said in the beginning, the only issue under the plaintiff's declaration was whether the tube was lost through the negligence of Dr. Landry. But the case was tried, and presented to the jury by the presiding Justice, upon another issue, also, namely, whether if the tube had entered the pleural cavity through accident, or the fault of another than Dr. Landry, did he then exercise such care to discover whether it was in the cavity, as ordinary professional skill and knowledge required? In other words, was he negligent, in view of the professional skill required, in making a reasonable effort to discover whether the tube was in the cavity?

This issue was tried out without objection. Under the rule laid down in *Cowen* v. *Bucksport*, 98 Maine, 305 and *Wyman* v. *American Shoe Refining Company*, 106 Maine, 263 that, where issues are

so tried, the case may be considered as if the declaration had been amended to conform to the evidence, this second issue may be properly regarded as before the court.

The conclusions reached in discussing the first issue are clearly applicable to the determination of the second issue, upon the question of varacity between the plaintiff and the defendant. There can be little question that the plaintiff's witnesses were clearly mistaken regarding their version of the loss of the tube; and that the defendant's version is the true one.

Accordingly, notwithstanding Mrs. Cry's denial, the evidence is ample to pursuade a reasonable mind, that the tube was lost through her own improper manipulation of the dressing and that she knew, or had every reason to know, that through her own fault it had dropped into the cavity. While she did not say that it was in the cavity, her statement to the doctor at the very beginning, that the tube was lost, and her persistent reitteration that it might be in the body, in view of the fact that it was there, are well nigh convincing of her knowledge of that fact. Yet she denied to the doctor that she had interfered with the dressing and, in view of the practical impossibility of the tube entering the body with the pin attached to it, completely put him off his guard and led him to as persistently declare that such disposition of the tube was impossible. Her denial which he had a right to regard as true put him off the track. He nevertheless repeatedly told her if she thought the tube was in the cavity to take the girl to the hospital and have the question determined. The real key to the situation on this phase of the case is found in a single remark from Dr. Twitchell, that she thought it was unnecessary for him to come so often, and in the evidence of another witness, Mrs. Shoratte, who lived in the lower part of the house, that she brought down stairs and showed to her portions of the dressing which she had removed more or less saturated with matter. This witness said: "She (Mrs. Cyr) often told me she had to change the child because she was getting so she could not rest. Lots of times she had to change them morning and night." As the only possible way, as it was left by Dr. Twitchell, the tube could fall into the cavity was by removing the safety pin, the necessary inference is that somebody removed the pin. As it was removed after Dr. Twitchell left it in place on October 31st and

before Dr. Landry dressed the incision on November second, and as nobody else had charge of the case, by the process of elimination it follows that the only person who could have removed it was Mrs. Cyr; and the above evidence of Dr. Twitchell and of Mrs. Shoratte shows that she undertook to treat the case herself and in so doing improperly secured the tube and lost it. In view of the fact that it was impossible for the tube to enter the cavity unless the safety pin was removed, and that Dr. Landry was completely misled by the denial of Mrs. Cyr, that she had interfered with the dressing, and that she was charged with every reason to believe that the tube was in the body, yet withheld the information, it is the opinion of the court, that when the doctor directed her time and again to take the child to the hospital for an operation, if she believed the tube was in the body, he exercised such care, under the circumstances in this case, as ordinary medical skill and knowledge required. The verdict should also be set aside upon this issue.

*Motion sustained.*
*New trial granted.*