KENNEBUNK, KENNEBUNKPORT AND WELLS
WATER DISTRICT

*vs.*

MAINE TURNPIKE AUTHORITY

York.    Opinion, February 9, 1950.

*Hutchinson, Pierce, Atwood and Scribner,*
*Waterhouse, Spencer & Carroll,* for plaintiffs.

*Varney, Levy & Winton,*
*Charles W. Smith,* for defendants.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ. (THAXTER, J., dissenting.)

MERRILL, J. On exceptions. This is an action on the case instituted by Kennebunk, Kennebunkport and Wells Water District, hereinafter called the District, against Maine Turnpike Authority, hereinafter called the Authority. The District is a body politic and corporate created by the Legislature of this State for the purpose of supplying water to towns and individuals within its territorial limits. P. & S. L., 1921, Chap. 159. The Authority is a body politic and corporate created in like manner for the purpose of constructing and operating a turnpike from a point at or near Kittery to a point at or near Fort Kent. P. & S. L., 1941, Chap. 69.

The District in this action seeks to recover damages for injury to its water supply, Branch Brook, which injury and damages it alleges were caused by the Authority by the construction of its turnpike across Branch Brook and its watershed. The injury claimed was the creation of a turbid condition of the water. To remedy this condition the Dis-

trict claims that it was compelled to construct a sedimentation plant which cost between $163,000.00 and $164,000.00.

The writ was dated April 16, A. D. 1947, returnable to the Superior Court in York County at the May 1947 Term. In said court the case was referred to three referees with the right of exceptions as to matters of law reserved. After hearing, the referees filed their report, finding for the plaintiff and assessing damages in the sum of $70,000.00. At the January Term of the Superior Court, 1949, the District moved for acceptance of the report and the Authority filed written objections thereto. The presiding justice rejected the report and exceptions to his ruling were taken and allowed.

The written objections to the report were as follows, viz.:

"(1)  It is against the law and the evidence

(2)  It is against the weight of the evidence

(3)  The referees fell into a plain mistake as there is no evidence to justify a finding of any unreasonable use by the defendant of its property or that any damage actually accrued to the plaintiff by reason of any acts of the defendant.

(4)  The amount of the report is obviously the result of a compromise on the part of the referees as the plaintiff claimed as damages only the cost of the Filtration Plant which amount was conceded to be one hundred sixty-three odd thousand dollars, while the defendant claimed no damage at all."

The report of the referees is general in its terms announcing a finding for the District and assessing damages in the sum of $70,000.00. It contains no statement of facts found upon which the report is based. Neither does the report contain any statement of the legal principles which the referees applied in determining liability or in assessing damages.

The only cause of action submitted to the referees for decision was the cause of action set forth in the declaration. This is the only cause of action upon which they were authorized to find for the District. The report of the referees in favor of the District was a decision that it had *such* cause of action. It is presumed that in finding for it they confined their inquiry thereto and based their decision thereon. Such is the effect of the general finding by the referees in favor of the District.

By Rule XXI "Objections to any report offered to the court for acceptance, shall be made in writing and filed with the clerk and shall set forth specifically the grounds of the objections, and these only shall be considered by the court." In interpreting the objections so filed, they, and the words used therein, must be interpreted as they apply to the report attacked as a decision of the specific cause of action set forth in the declaration. To so interpret such objections they should also be interpreted as they apply to such cause of action.

Objections (1) and (2) are so manifestly insufficient under Rule XLII and Rule XXI as interpreted in *Staples* v. *Littlefield*, 132 Me. 91 and *Throumoulos* v. *Biddeford*, 132 Me. 232 that they could not be considered by the justice to whom the report was presented for acceptance, nor need we give them further consideration.

Objection (3) presents two questions of law. A finding by referees without any 'evidence to justify it is an error of law. *Staples* v. *Littlefield*, *supra*. These alleged errors of law are, (a) that "there is no evidence to justify a finding of any unreasonable use by the defendant of its property" and (b) that there is no evidence to justify a finding "that any damage actually accrued to the plaintiff by reason of any acts of the defendant."

If rejection of the report by the presiding justice can be sustained upon one or the other of these legal grounds, the

exceptions to its rejection by him must be overruled. If the rejection of the report was justified under objection (3), it will become unnecessary for us to consider the validity of objection (4).

As the case comes to this court, although the record is very voluminous, the issues for our determination are contained within narrow compass. The plaintiff seeks to recover damages for injury to its claimed property right to take water from Branch Brook under legislative charter and to make use of said water for distribution to the public under the same. It claims that the defendant, although it was a governmental agency created by legislative charter, and although it was engaged in a governmental function, within the authorization of its charter, to wit, building a turnpike across Branch Brook and the watershed thereof, so constructed the same and used such methods of construction that the quality of the water of Branch Brook was rendered so impure, viz., so turbid, that it was unfit for distribution by the plaintiff to its customers. The sole injury claimed by the plaintiff was to the waters of Branch Brook as used by it for a source of public water supply, and the sole damages claimed were to its use by the plaintiff as such.

The only *right* to the use of the waters of Branch Brook by the District set forth *in the declaration* was that Branch Brook was included in the sources of supply it was authorized to use under its charter. The declaration contains no allegation that the District owned any riparian land touching Branch Brook. The declaration did not set forth that the District was the owner of, possessed, used or that there even existed any riparian rights based upon its ownership of riparian land, nor does it set forth the existence of facts from which the same may be inferred, nor does it assert any invasion or damage to such rights by the Authority. The sole claim for damages was based upon the District's right as a quasi municipal corporation under its charter to dis-

tribute water from Branch Brook, and an invasion of such rights by the Authority and injury caused thereby.

The report of the referees, therefore, must be interpreted in the light of this alleged cause of action; and the reasons assigned as objection thereto must likewise be interpreted as applicable to the report sustaining such cause of action.

It might be inferred from the evidence that the District owned land on the brook where its pumping station and intake were situate and also that it owned some riparian land on the brook above its pumping station and below the riparian land owned by the Authority. The only purpose for which the District's ownership of such riparian land can be considered, however, is whether or not such ownership conferred upon it the right to use the waters of Branch Brook as a source of supply for public distribution, this being the only right that the District claimed to have and the only right which it claimed was invaded by the Authority.

The defendant was an upper riparian proprietor, it had title to its right of way across Branch Brook and its watershed. As such riparian proprietor it asserted that it had a right to use its land for all reasonable purposes; that so far as the rights of the plaintiff are concerned, the building of the turnpike across the watershed of Branch Brook and Branch Brook, and all acts which it did in connection therewith were authorized by its charter and constituted only a reasonable use of its own land by it as an upper riparian proprietor; and that if in so acting it injuriously affected the quality of the water of Branch Brook, such injury was only the result of a reasonable use by it of its own land and was *damnum absque injuria* so far as the plaintiff was concerned.

The only cause of action set forth in the declaration was injury to the right of the District to use the waters of Branch Brook as a source of supply for public distribution.

This was the only use or right of use set forth in the declaration. Unless the District, as against the Authority as an upper riparian proprietor, had the right to use the waters of Branch Brook for such purpose, the damage to the quality of the water would be *damnum absque injuria*, that is, damage without the invasion of legal right.

Objection (3) that "there is no evidence to justify a finding of any unreasonable use by the defendant of its property" raises a question of law which goes to the very essence of the plaintiff's claim. If there is "no evidence to justify a finding of any unreasonable use by the defendant of its property" the report of the referees should not be accepted. Unreasonable use may be either such a use as is unreasonable because of its very nature, or a use which, though reasonable in and of itself, becomes unreasonable because of the negligent manner in which it is exercised with respect to the legal rights of others to whom the one exercising the use owes a duty of care. Objection (3) is sufficient to raise the legal question as to whether or not there is any evidence of unreasonable use of either character. Interpreted by the rule we have heretofore set forth, this objection means that there was no evidence from which the referees could find that the Authority as a riparian proprietor made any unreasonable use of its riparian land as against any right owned, possessed or used by the District which it set forth in its declaration and which the referees could find that the District legally owned, possessed or used.

To determine whether or not a particular use of his riparian land and the waters of a stream flowing through the same by an upper riparian proprietor is reasonable as against a lower riparian proprietor on the same stream is not always simple and may involve many conflicting factors.

In certain cases the use and the manner of the use of upper riparian land which injuriously affects the quality of the stream flowing through it is so clearly reasonable

that it is the duty of the court to hold that the upper riparian proprietor is within his rights as a matter of law. In other cases, the use or the manner of the use of his land by an upper riparian proprietor may be so extraordinary and unreasonable and the damage to the quality of the water so great, and the lower proprietor's legal rights to the use of the water so clearly invaded that it is the duty of the court to rule as a matter of law that the upper proprietor's use of his land is unreasonable. There are, however, intermediate cases where the question is so close that it is a question of fact, instead of law, whether the use of his land by the upper proprietor is a reasonable one or, if reasonable in and of itself, the manner of use is so negligently conducted that it becomes unreasonable with respect to the legal rights of the lower riparian proprietor. The solution of this question of whether or not the use is a reasonable one depends not only upon the nature and manner of the use by the upper proprietor but also upon the use that is being made by the lower proprietor of his land and of the waters of the stream passing through the same.

The case here presented to us is of novel impression in this State, and so far as we can discover, there is no precedent exactly in point. However, an application of general principles of law governing the rights and duties of land owners, one to another, and of the law respecting the correlative rights and duties of riparian proprietors upon the same stream will afford a solution.

The leading case in this State, and one which had been approved by many text writers and many courts of last resort, is *Lockwood Company* v. *Lawrence*, 77 Me. 297. In this case on pages 316 and 317 we said:

> "Every proprietor upon a natural stream is entitled to the reasonable use and enjoyment of such stream as it flows through or along his own land, taking into consideration a like reasonable use of such stream by all other proprietors above or below him. The rights of the owners are not absolute

but qualified, and each party must exercise his own reasonable use with a just regard to the like reasonable use by all others who may be affected by his acts. Any diversion or obstruction which substantially and materially diminishes the quantity of water, so that it does not flow as it has been accustomed to, or which defiles and corrupts it so as to essentially impair its purity, thereby preventing the use of it for any of the reasonable and proper purposes to which it is usually applied, is an infringement of the rights of other owners of land through which the stream flows, and creates a nuisance for which those thereby injured are entitled to a remedy. *Merrifield* v. *Lombard,* 13 Allen, 17.

'In determining what is a reasonable use, regard must be had to the subject matter of the use; the occasion and manner of its application; the object, extent, necessity and duration of the use; the nature and size of the stream; the kind of business to which it is subservient; the importance and necessity of the use claimed by one party, and the extent of the injury to the other party; the state of improvement of the country in regard to mills and machinery, and the use of water as a propelling power; the general and established usages of the country in similar cases; and all the other and ever varying circumstances of each particular case, bearing upon the question of the fitness and propriety of the use of the water under consideration.' "

It is true that this case related to the casting of mill waste into the stream by an upper riparian proprietor. Nevertheless, this case is a leading case upon the doctrine that reasonable use by *both the upper and lower riparian proprietors* is the underlying principle which determines their correlative rights. Although texts and opinions are replete with the statement that the general rule of law is that every man has a right to have the advantages of a flow of water on his land without diminution or alteration of its quality or

44

quantity, this statement is subject to qualifications. This qualification is well stated in 56 Am. Jur. 827, Sec. 406 where it is stated:

> "The general rule above stated as to the right of every riparian owner to have a stream flowing by or through his land flow in its natural purity does not mean that a riparian owner has a right to a stream absolutely pure, without any pollution whatever. Riparian owners are entitled to the reasonable use and enjoyment of streams flowing by their land, and it is incident to such enjoyment that the purity of the water should be impaired to some extent. It is impossible to use a stream for domestic, manufacturing, commercial, or other purposes without impairing its original purity. The law recognizes the right to such reasonable use and the result which of necessity flows therefrom, and provides that the right of one riparian owner to the use of a stream in its purity must yield to the right of every other riparian owner to make a reasonable use of the same stream. If a proper and reasonable use by an upper owner causes damage to a lower owner, such damage is damnum absque injuria. This question of reasonableness is usually one of fact to be determined in each case according to the circumstances, such, for instance, as the size and character of the stream, the purposes to which it is or can be applied, the nature and importance of the use claimed and exercised by one party, and the inconvenience and injury to the other."

It is to be noted that in the rule as laid down in *Lockwood Company* v. *Lawrence, supra,* it is stated: "The rights of the owners are not absolute but qualified, and each party must exercise his own reasonable use with a just regard to the like *reasonable use by all others who may be affected by his acts.*" (Emphasis ours.) Therefore, in determining whether or not the use made by the Authority of its land and the stream was a reasonable one *as against the District* as a lower riparian proprietor, we must determine whether

or not the use by the District of the stream, as its source of public water supply, and which is the only use that it claims was injuriously affected by the acts of the Authority, was itself a reasonable use thereof.

Unless the acts of the Authority in the use of its land injuriously affected some reasonable use by the District of the waters of Branch Brook, the Authority was not making an unreasonable use of its land with respect to the District. Whether or not the District was making a reasonable use of the waters of the brook depends not only upon the use which it was actually making of the same but also as said in *Lockwood Company* v. *Lawrence, supra,* upon whether it was using the same for a *proper purpose* and in the *kind of business* to which the stream was *subservient.* Unless the District had the legal right, that is, the proprietary right, to use Branch Brook as a source of public water supply, its use of water therefrom for such purpose was neither a *proper one* nor was it a use to which the brook was *subservient.* Reasonableness of its use depends upon its legal right to exercise the same.

By this action the District seeks to impose a restriction upon the use by the Authority of its own land. The only right to impose this restriction, if it exists, is the use of the water exercised by the District. To the extent that such restriction is imposed it prejudices the legal right which the Authority would otherwise have to use the land belonging to it. It would be a strange doctrine indeed that the exercise of a use of water which the user has no legal right to exercise prevents the use of his own land by another, which use of the land but for such use of the water he would have the legal right to exercise. The only legal ground upon which the use of riparian land by the owner thereof is restricted in favor of the user of water is that the use of the land is an unreasonable one. However, as said in *Rindge* v. *Sargent,* 64 N. H. 294, "A use is reasonable which does not

unreasonably prejudice the *rights* of others." (Emphasis ours.)

Reasonable use is a relative term not an absolute one. The reasonableness of a use in any given case must be measured against some norm, that is, against the authoritative standard applicable to that case. To constitute such norm or authoritative standard against which the reasonableness of the lawful use of its own land by the Authority is to be measured, the use of the water exercised by the District must itself have been one which it was legally exercising. In other words, unless the invaded use exercised by the District was a use which it was legally exercising, it cannot be considered in determining whether the lawful use of its own land by the Authority was a reasonable one.

The District was created a body politic and corporate by Chapter 159 of the Private and Special Laws of 1921. Sections 2 and 3 of said charter read as follows:

"**Sec. 2. Source of water supply; may take and hold land by purchase or otherwise, subject to general provisions.** Said district is hereby authorized, for the purposes aforesaid, to take and hold sufficient water of any surface or underground brooks, streams, springs, or ponds in said district and may take and hold by purchase or otherwise any land or real estate necessary for erecting dams, power, reservoirs, stand-pipes, or for preserving the purity of the water or watershed and for laying and maintaining aqueducts for taking, discharging and disposing of water.

The provisions of sections twenty-three to twenty-six inclusive, of chapter sixty-one of the revised statutes shall apply to all land taken under this section.

**Sec. 3. Damages, how ascertained.** Said district shall be liable for all damages sustained by persons or corporations in their property by the taking of any land whatsoever, or water, or by

flowage, or by excavating through any land for the purpose of laying pipes, building dams, or constructing reservoirs, or stand-pipes. If any person sustaining damage as aforesaid and said corporate district shall not mutually agree upon the sum to be paid therefor, such person or corporation shall cause his or her or its damages to be ascertained in the same manner and under the same conditions, restrictions and limitations as are or may be prescribed in the case of damages by the laying out of highways."

Claiming to act under its charter, which created it "for the purpose of supplying the inhabitants of said district and said municipalities, etc., with pure water for domestic and municipal purposes," the District was using Branch Brook, which was located within its territorial limits, as its source of water supply for said purpose.

Sec. 2 of the charter is not a grant to the plaintiff of a proprietary right and ownership in or to the use of the waters mentioned therein. It but marks out and defines the sources of water supply which the plaintiff, within the terms of its charter, may use. In other words, Sec. 2 is not a grant to the plaintiff of water rights but authorizes it to use as its source of supply, if proprietary rights are properly acquired, any waters named therein. This construction of Sec. 2 is borne out by Sec. 3 which provides for the ascertainment of damages to persons and corporations by the taking, among other things, of "water."

It is to be remembered that the plaintiff District was not using a great pond, the waters of which are owned by the State, as its source of water supply, but was using the water of a brook or stream.

The rights of the District, derived from its charter, to use the waters of Branch Brook are governed by the law as set forth in *Hamor* v. *Bar Harbor Water Company,* 78 Me. 127, and not by the law as set forth in *Auburn* v. *Water Power*

*Co.,* 90 Me. 576. The former decision lays down the principles of law which determine the extent of the rights conferred upon the holder of a charter authorizing it to use a brook as a source of public water supply. The latter decision, although it held that a charter authorizing the use of the water of a great pond as a source of public water supply was a grant of the water and use thereof for such purpose, was carefully limited in its application when the court said:

"And it is only of our great public ponds and lakes that we are now speaking. We are not declaring or attempting to define the rights appertaining to wells, springs, rivulets or small ponds. It is only of great ponds and lakes, the titles to which are held by the state for the use of the public, that we are now speaking."

Brooks and streams differ materially from great ponds and lakes. As said in the Auburn case: "The waters of great ponds and lakes are not private property. They are owned by the state; and the state may dispose of them as it thinks proper." This doctrine has no application to the waters of brooks and streams, to the use of the waters of which the riparian proprietors upon their banks have certain rights recognized and limited by law. It is true that the waters of such streams may be taken for a public use. This may be done by the State itself, by a public Agency created by the State, or by a private public service corporation duly organized and upon which such power has been conferred by the State. Such taking and diminution of the rights of the riparian proprietors, be they either upper or lower proprietors, however, is the taking of private property for a public use, and this can be accomplished only in the manner prescribed by law and then only when fair compensation is paid therefor.

In *Hamor* v. *Bar Harbor Water Co.,* 78 Me. 127, 132, we said:

"There can be no question but that the act granting the right to the defendants to take, detain and use the water from the sources and for the purposes therein specified, is constitutional. The decisions are numerous that private property may be taken by the sovereign power of the government in the exercise of the right of eminent domain for purposes of public utility. That this may be done when the object is to supply a village or community with pure water, and though the agency by which it is done may be a private corporation thereby deriving profit and advantage to itself, is not denied. In such case the interests of the public, from considerations affecting the health and comfort of densely populated communities, require that private property may be thus appropriated for uses which are deemed public. It is thus that the right of property of private individuals, whether it be lands, or the usufructuary interest in flowing water, is made to subserve the public exigencies, and for which, under the constitution, 'just compensation' is guaranteed and must be made. 'It is true that the injury in the one case is to the land, and in the other to the water; but this can make no difference in the result. Interests in water, as well as in land, may be taken under this act; and both are equally the subjects of compensation.' *Denslow* v. *New Haven and Northampton Co.* 16 Conn. 103; *St. Helena Water Co.* v. *Forbes,* 62 Cal. 182; S. C. 45 Am. Rep. 659.

Neither can water be diverted from a private stream under authority granted by the legislature in the exercise of the right of eminent domain for the purpose of supplying a town or village with pure water without making compensation to the riparian proprietors whose rights are thereby injuriously affected. *Bailey* v. *Woburn,* 126 Mass. 416; *Lund* v. *New Bedford,* 121 Mass. 286; *Wamesit Power Co.* v. *Allen,* 120 Mass. 354. Nor can individual property be taken, or individual rights impaired, for the benefit of the public without such compensation. *Canal Commissioners* v. *People,* 5 Wend. 456."

In the *Hamor* case the court further held that a mere use of the water did not constitute a taking, but that all of the required steps incident to the accomplishment of a legal taking by the exercise of the power of eminent domain must be followed.

In the instant case the record is barren of any evidence from which it could be found that the District ever made or even attempted to make a legal taking of any of the waters of Branch Brook. Although in the *Hamor* case the Water Company was a private public service corporation, the same law applies to quasi municipal public service corporations. Neither the State nor any Agency of the State can take private property for public use without the payment of just compensation therefor. To enable a party to obtain just compensation for property taken he must know with certainty the extent of the taking. With respect to taking water from a stream we said in the *Hamor* case, *supra,* at 134:

> "There is no reason why the same requirements should not apply equally to the taking of water from a stream in which the plaintiffs have valuable riparian rights, as to the taking of land. Both are equally the subjects of property and of compensation. *Ex parte Jennings,* 6 Cow. 526. By the statutes of this state the word land includes all tenements and hereditaments connected therewith, and all interests therein. The riparian proprietor may insist that his right to the use of water flowing in a natural stream shall be regarded and protected as property. *Nuttall* v. *Bracewell,* L. R. 2 Exch. 9. Such right is not a mere easement or appurtenance but is inseparably annexed to the soil itself. *Dickinson* v. *Grand Junction Canal Co.* 7 Exch. 299; *Cary* v. *Daniels,* 8 Met. 480. And the damage for the taking of such right may be greater or less according to the quantity of water diverted as the damage may be greater or less when measured by the quantity of land taken. If it be necessary, therefore, that the taking of land thus appropri-

ated to public use be evidenced by some writing defining it by definite and specific boundaries, for the same reason should there be like evidence of the measure or quantity of water thus taken. Without this, no proper estimate of damages could be made. Without this, no proper protection would be afforded to the parties without resorting to the 'uncertainties of conflicting testimony.' "

The fact that the District may be a riparian proprietor does not confer upon it the right to abstract water from Branch Brook for distribution under its charter. The right of a riparian proprietor to draw water from the stream is only for a riparian use, viz., a reasonable use upon the riparian land. Abstraction for sale to others is not such reasonable use. As said in Restatement Torts, Vol. 4, Chap. 41, Sec. 855, page 374, "Non-riparian uses are those made neither on nor in connection with the use of the riparian land and include such uses as the diversion and sale of water from the stream for non-riparian consumption." Neither does the fact that the District is a quasi-municipal corporation enlarge its rights as a riparian proprietor. The great weight of authority is that a municipal corporation cannot by virtue of the ownership of riparian lands abstract water from a brook on which they are located for public distribution. The authorities are collected in an extensive note in 141 A. L. R. 639. The majority rule is the necessary consequence of the principles enunciated by us in *Hamor* v. *Bar Harbor Water Co. supra.* To hold otherwise would allow a municipal corporation to take private property without the payment of just compensation.

The only use of the water of a stream which will restrict the rights of a lower riparian proprietor in its use of such water, or which will restrict the use which an upper riparian proprietor may make of his own land, is a use which the one exercising the same has the legal right to exercise. If the use exercised by a riparian proprietor be a riparian use, the right to exercise it was acquired as a usufructuary

right growing out of and annexed to the ownership of the riparian land. If, however, as here it be a non-riparian use, the right to exercise the same must be acquired by purchase or grant from, or by the exercise of the right of eminent domain against those whose rights it is sought to restrict by the exercise of such use. Unless so acquired, the non-riparian use will not be a reasonable use against either upper or lower riparian proprietors, and its exercise will not be a factor entering into the determination of whether or not the use of his land by an upper riparian proprietor is a reasonable use thereof. The upper proprietor may make any use of his land not forbidden by law that he could make if such use by the lower proprietor was not being exercised.

There is no evidence in the record that the District had ever acquired, either by purchase, grant or the exercise of its right of eminent domain, any right to use water from Branch Brook as a source of public water supply.

We hold as a matter of law that as against such use of the water by the District, the use by the Authority of its own land was a reasonable use.

There is no evidence in the record that the District was making, ever had made, or even intended to make, any use of the water of Branch Brook for any purpose to which it was entitled to use the same as a riparian proprietor, nor did it claim damages for any injury to any such right of user.

As before stated herein, the declaration does not allege either the ownership by the plaintiff of any riparian land on Branch Brook or that it owned, possessed or was exercising any rights as such riparian owner. As before stated, the situation of the District as a lower riparian proprietor has no bearing upon the issues that were before the referees except as the same might give the District the right to use the water for the purpose alleged in the declaration. In-

vasion of the rights of the District as a riparian owner was not an issue before the referees, unless the right to use the water of Branch Brook as a source of public water supply be a riparian right. We have already held that it is not.

The only cause of action set forth in the declaration is a violation of the District's right to use the water as a source of water supply for public distribution by rendering the same turbid. This was a use of the water which on the record before the referees they could not find the District had a legal right to exercise.

The rights of the District against the Authority, so far as the present decision is concerned, are confined and limited to those claimed in the declaration and established by the evidence before the referees. So confined and limited, the District did not allege in its declaration any right to use the water which, as against the Authority, the evidence before the referees shows it legally possessed, and it sought to recover only for an injury to an alleged right which on such evidence, as against the Authority, it did not possess. The acts of the Authority, an upper riparian proprietor, herein complained of, as against the District, in view of the cause of action set forth in the declaration, are not an unreasonable use by the former of its riparian land. This we hold as a matter of law.

This decision is not to be interpreted as holding as a matter of law that the use by the Authority as an upper riparian proprietor of its own land would have been reasonable against a lower riparian owner making riparian use of the water. Upon this question we need not, nor do we intimate an opinion as it is not here in issue. Neither is this decision to be interpreted as holding such acts reasonable as a matter of law as against one, who having obtained the requisite legal rights as against an upper riparian proprietor, is legally using the water of a brook as a source of

public water supply. Upon this question we need not express nor do we intimate an opinion. There was no evidence in the record from which such a situation could have been found to exist. We confine this decision strictly to the cause of action set forth in the declaration and the evidence with respect thereto contained in the record. As this determination by us justifies the rejection of the referees' report by the presiding justice there is no need for us to consider ground of objection numbered (4).

It is to be borne in mind that this is not a final decision of the cause of action. It is not finally decisive even of the rights of the present parties. Those must be determined in a trial *de novo* upon the facts then in evidence and an application thereto of the controlling principles of law.

Much less is this opinion a final determination that the District has no right to draw water from Branch Brook for public distribution. Wherever we have herein made the statement that the District does not have that right, implicit in such statement is the qualification "on the evidence before the referees."

It is unnecessary for us to consider the contention of the plaintiff that the acts of the defendant resulted in the creation, and maintenance by it, of a public nuisance, nor do we intimate an opinion with respect thereto. An individual can recover damages for the creation or maintenance of a public nuisance only by showing that he has suffered *special damage* caused thereby. Such special damage must be alleged and proved before recovery may be had. *Low* v. *Knowlton*, 26 Me. 128; *Cole* v. *Sproul*, 35 Me. 161; *Brown* v. *Watson*, 47 Me. 161; *Holmes* v. *Corthell*, 80 Me. 31. The only damage claimed by the plaintiff as we have heretofore shown was to its alleged right to use the water of Branch Brook as a source of supply for public distribution. This was a proprietary right which, although exercised by the

District, the evidence before the referees did not show that it legally possessed. This does not constitute such special damage to the plaintiff as would entitle the plaintiff to recover, even if the acts of the defendant amounted to the creation or maintenance of a public nuisance. The action of the presiding justice in rejecting this report must be sustained, even though he did not assign the proper reason therefor, and even if some of the reasons he assigned for his action in rejecting the report are erroneous.

If a report be rejected, and the rejection can be sustained on *any ground specifically set forth in the written objections, exceptions to the rejection cannot be sustained even though an erroneous ground be assigned for the rejection.* The question of whether a report be accepted or rejected is wholly a question of law and not at all one of fact. Therefore, it is not prejudicial error on the part of the presiding justice to assign the wrong reason for the rejection of a report when the record discloses legal grounds for its rejection, provided such grounds are specifically set forth in the written objections. In other words, if the ruling is right, the fact that a wrong reason has been assigned therefor is immaterial. *Warren* v. *Walker,* 23 Me. 453; *Petition of Kimball,* 142 Me. 182; 49 Atl. (2nd) 70; *Austin* v. *Inhabitants of St. Albans,* 144 Me. 111; 65 Atl. (2nd) 32.

We sustain the action of the presiding justice only upon the grounds set forth in this opinion, which grounds are within the objections specifically set forth in writing, and the exceptions are overruled. The case is remanded to the Superior Court.

*Exceptions overruled.*

DISSENTING OPINION.

THAXTER, J. Ordinarily in a case of this kind, where I find that I am unable to assent to the views of my associates,

I would content myself with a mere notation of non-concurrence. Here, however, because I feel that the court is disregarding a well established principle of practice, I believe I should explain the reasons for my disagreement.

We have been able in this jurisdiction to soften the asperities of common law pleading and adapt its forms to the needs of changing conditions because of the wisdom of our predecessors on this court who interpreted liberally statutes and rules designed to settle promptly the issues which the parties have intended to try. Thus to avoid a variance between allegations and proof, an amendment of a declaration has been permitted even after verdict; and in other instances specific proof of a necessary fact has been held to have been waived, if the case has been tried on the assumption that such proof was not required. *Cowan* v. *Bucksport*, 98 Me. 305; *Wyman* v. *American Shoe Finding Co.*, 106 Me. 263; *Cyr* v. *Landry*, 114 Me. 188; *Clapp* v. *Cumberland County Power & Light Co.*, 121 Me. 356; *Burner* v. *Jordan Family Laundry*, 122 Me. 47; *Isenman* v. *Burnell*, 125 Me. 57; *Benson* v. *Inhabitants of the Town of Newfield*, 136 Me. 23. In *Cowan* v. *Bucksport, supra,* it was argued on a motion for a new trial that there was no evidence in the record before the Law Court to show that the fourteen days' notice required by the statute to render a town liable for a highway defect had been given within the required time. Justice Emery, afterwards Chief Justice, who by no possibility could be regarded as tolerant of loose pleading or practice, had this to say in disposing of this contention, page 308, "There was no evidence or suggestion at the trial that the notice was not received within the fourteen days. Must the verdict now be set aside, and the parties and the court subjected to the burden of another trial of the case, because it was not more explicitly or precisely stated in the colloquy over the notice that it was received within fourteen days? We think not. We think the point now made is within the category of points to be made at the trial, or to be considered

as waived. It was not made at the trial and no intimation was given that it would be made. Had it been made at the trial and sustained, the plaintiff would either have supplied the evidence or submitted to an adverse verdict. If not sustained, the defendant could have excepted and thus regularly and seasonably brought the question here. The point, not having been made at the trial, cannot be sustained here, even if it be otherwise sustainable."

The instant case between two quasi-municipal corporations was tried by agreement of the parties before three referees. Although the specific source of the plaintiff's title is not directly alleged or proved, it is obvious that the case was tried on the theory that the plaintiff had lawfully acquired the right to take water from Branch Brook to serve the territory wherein it was authorized to supply water for domestic and municipal purposes. It had been so using the water of Branch Brook for more than twenty years, and its predecessor in title for some time prior to that. Its right to do so had never been questioned. It was not questioned at the hearing which lasted for many days and resulted in a record of well over a thousand pages. The taxpayers have been put to great expense not only for court charges but for attorneys' fees and expenses. Is it possible that this case must go back for a hearing *de novo* simply because the plaintiff did not affirmatively show the source of its title, a title which the parties have inferentially admitted? If the plaintiff did not have a valid title, there was a complete defense and no need of going through a long and expensive hearing. Should we not apply the language of Judge Emery: "The point, not having been made at the trial, cannot be sustained here, even if it be otherwise sustainable."